### 73695. GRANGE MUTUAL CASUALTY COMPANY v. BRINKLEY.
(355 SE2d 767)

BANKE, Presiding Judge.

The appellant, Grange Mutual Casualty Company, issued three policies of motor vehicle accident insurance to the appellee, Durwood B. Brinkley. While these policies were in effect, Mr. Brinkley's minor daughter, Debra, sustained severe injuries in a collision which occurred while she was riding as a passenger on an uninsured motorcycle being operated by her boyfriend, Leo Peloquin. Grange sought a declaratory judgment to the effect that Debra was not a resident of her father's household when this accident occurred and thus was not entitled to recover either "no-fault" or uninsured motorist benefits under the terms of the policies. We granted an interlocutory appeal from the denial of the company's motion for summary judgment in this action.

Debra's parents were divorced in 1978, at which time she began

living, pursuant to court order, in the legal custody of her mother. In February of 1982, her mother signed a document purporting to relinquish custody to the father, for the stated reason that Debra's behavior had become "completely uncontrollable, and I have exhausted all of my resources to help her." Debra resided with her father until September of 1982, when she began living with Mr. Peloquin. She continued to live with Mr. Peloquin until August 14, 1983, the date of the accident. Upon her release from the hospital following the accident, she returned to her father's home.

When Debra left her father's house to live with Mr. Peloquin, she left behind her television set, her stereo, and some of her clothing, all of which remained in what had been her bedroom. On several occasions during the course of the following year, she and her father discussed the possibility of her returning to his house to live. Her father told her during these discussions that she was free to return at any time, but only if she agreed to attend school, study, maintain a more pleasant attitude at home, and cease seeing Mr. Peloquin. Although Debra apparently indicated to her father more than once that she intended to return to his home and abide by these rules, she never actually attempted to do so. Throughout this period, the father's then-wife, Tammy Brinkley, continued to list Debra as a beneficiary under her group health insurance coverage.

In the uninsured motorist coverage provisions of the three automobile insurance policies issued to Mr. Brinkley by the appellant insurance company, the term "insured" is defined, in pertinent part, to mean "the named insured and, *while residents of the same household*, his spouse and the relatives of either . . ." (Emphasis supplied.) In the personal injury protection, or "no-fault," provisions of the policy, the term "eligible insured person" is defined in pertinent part, to mean "the named insured or any relative"; and the term "relative" is defined to mean "the spouse or any other person related to the named insured by blood, marriage, or adoption . . . *who is a resident of the same household as the named insured, whether or not temporarily residing elsewhere*." (Emphasis supplied.)

In support of its contention that Debra was not covered by the policy at the time of the accident, the insurance company relies on *Robertson v. Lumbermen's Mut. Cas. Co.*, 160 Ga. App. 52, 53 (286 SE2d 305) (1981), wherein this court held that "[t]he ordinary and accepted meaning of the phrase 'one residing in the same household' in an insurance policy, pertains to one who physically maintains permanent or frequently utilized living accommodations in the principal insured's home." Mr. Brinkley, on the other hand, relies on *Davenport v. Aetna Cas. &c. Co.*, 144 Ga. App. 474, 475 (241 SE2d 593) (1978), wherein this court, citing *State Farm &c. Ins. Co. v. Snyder*, 122 Ga. App. 584, 586 (178 SE2d 215) (1970), held that " '[a] common

roof is not the controlling element.' [Cit.] It is rather a conclusion based on the aggregate details of the living arrangements of the parties." The trial court, "mindful of the seeming opposite results reached" in these two cases, concluded that the facts of the present case were more similar to those in *Davenport* than to those in *Robertson* and, noting the evidence that a portion of Debra's belongings had remained in her father's home while she was living with Peloquin, ruled that the insurance company had failed to establish as a matter of law that Debra was not a resident of her father's household at the time of the accident. *Held*:

We agree with the trial court that, since the "no-fault" provisions of the three policies specifically provide coverage for any relative who is a member of the named insured's household, "whether or not temporarily residing elsewhere," the *Robertson* test of maintaining "permanent or frequently utilized living accommodations in the principal insured's home" is clearly inapplicable to that claim. We also agree with the trial court that *Davenport* and *Robertson* are distinguishable on their facts and that *Davenport* rather than *Robertson* is controlling in the present case.

In *Robertson*, the principal insured was the wife of the person sought to be categorized as an insured relative; however, prior to the accident, the husband had moved out of the marital home, the wife had initiated divorce proceedings, and the exclusive use and possession of both the home and the insured automobile had been awarded to the wife by court order. The injuries sought to be compensated occurred when the husband took the automobile without the wife's knowledge or consent and collided with another vehicle while drunk. In *Davenport*, on the other hand, the person sought to be categorized as an insured was, as in the present case, a minor child who had been injured while riding as a passenger on an uninsured motorcycle. Up until a few weeks prior to the accident, the child had lived in Chicago with her mother and her stepfather, who was the principal insured. Although she had been moved to Atlanta to live with her natural father and her brothers and to attend high school, she had done so with the understanding that she could return "home" to Chicago any time she wanted to. After the accident and following her discharge from the hospital, she continued to live at her father's home in Atlanta for approximately four months, at which time she returned to Chicago to live with her mother and stepfather.

The crucial distinction between *Robertson* and *Davenport* is, of course, that in *Robertson* the person sought to be categorized as an insured family member was *sui juris* and thus presumptively capable of making his own decisions about where to reside, while in *Davenport* the person on whose behalf coverage was sought was an unemancipated minor, whose intentions in this regard were neither predict-

able nor, absent parental consent, controlling. To the extent that the two decisions are capable of being reconciled, the trial court was clearly correct in concluding that the present case is governed by *Davenport* rather than by *Robertson*, with the result that the insurance company's motion for summary judgment was properly denied. To the extent that the two decisions cannot be reconciled, i.e., to the extent that *Robertson* may be read as authority for the proposition that one who does not "physically maintain[] permanent or frequently utilized living accommodations in the principal insured's home" may never, regardless of other circumstances, be considered a member of his household, that case is hereby overruled.

*Judgment affirmed. Deen, P. J., McMurray, P. J., Carley, Pope, and Benham, JJ., concur. Birdsong, C. J., Sognier and Beasley, JJ., concur specially.*

BIRDSONG, Chief Judge, concurring specially.

The majority opinion opines that *Robertson v. Lumbermen's Mut. Cas. Co.*, 160 Ga. App. 52 (286 SE2d 305) (1981) may be read to authorize the proposition that one who does not physically maintain permanent residence nor who does not utilize living accommodations in a home may *never, regardless of other circumstances*, be considered as a resident of that household. (The emphasized language does not appear in the *Robertson* decision.) Any statement that never admits the possibility of an exception is overbroad. Consequently, should one reading the *Robertson* decision attempt to impute so broad an interpretation to the definition of residence in the same household, I concur such an interpretation is incorrect, is not in that case, and is not warranted by the facts or the law of that case. In *Robertson*, the husband's residence in his wife's home had been precluded by court order while divorce proceedings were in progress, separate residences had been established, and there is in *Robertson* no residual vestiges of joint residence other than the rebutted inference of residence arising from an existing (i.e., non-dissolved) marriage. Thus insofar as any part of the *Robertson* case (or any other case) ever can be subject to a dogmatic, non-violable perfection, never subject to any exception, such a possible interpretation should be negated by this court. Insofar as *Robertson* in Division 1 on pp. 53-54 holds that the facts and law shed light on the intent of the parties and where those facts reasonably establish an intent to live separately and the facts do not show even an inferential desire to return as manifested by long absence and no utilization or reservation of living accommodations, then I do not concur that the definition of residence in *Robertson* should be overruled.

I am authorized to state that Judge Sognier and Judge Beasley join in this special concurrence.

DECIDED MARCH 19, 1987.

Richard A. Rominger, Randolph H. Donatelli, for appellant.
Carmel W. Sanders, Karen D. Barr, John T. Woodall, for appellee.