A95A1842. HINTON v. INTERSTATE GUARANTY INSURANCE COMPANY.
(470 SE2d 292)

BIRDSONG, Presiding Judge.

Appellant Lynn Hinton, plaintiff in this personal injury case, seeks coverage by her uninsured motorist carrier, Interstate Guaranty Insurance Company, for damages arising out of her collision with a farm tractor being used to haul a mobile home.

Defendants Kendrick et al. were using Billy Kendrick's farm tractor to haul a mobile home after sunset on a county road. They had no permit to haul a mobile home and were not using a specialized vehicle as required by Department of Transportation regulations. The trailer was 14 feet wide. The tractor driver was cited for having a load too wide, no amber lights on escort, no wide load sign on escort, towing after dark, and an improper towing vehicle. Kendrick's tractor was not covered by liability insurance.

The trial court granted partial summary judgment to the defendant Interstate Guaranty Insurance Company, finding that "a farm tractor is not a motor vehicle for purposes of the uninsured motorist statute." Appellant Hinton contends the trial court erred in "holding that a farm tractor engaged in a non-agricultural activity is not a motor vehicle for purposes of the Georgia Uninsured Motorist Statute." *Held*:

1. The insurer contended, and the trial court found, that this

farm tractor was not a motor vehicle for purposes of the uninsured motorist law because the insurance code provision requiring liability insurance (OCGA § 33-34-2) designates a "motor vehicle" as being a vehicle having more than three load-bearing wheels "of a kind required to be registered" by Georgia "laws . . . relating to motor vehicles designed primarily for operation upon the public streets, roads, and highways and driven by power other than muscular power." OCGA § 33-34-2 (1).

The Georgia Uninsured Motorist Statute was not intended to provide all-risk coverage to the citizens of this state. OCGA § 33-7-11 (a) (1) pertinently provides that an automobile or motor vehicle liability policy, as identified therein, shall not be issued or delivered in this state, "unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle." This statute on its face reveals the intent of the legislature that the covered risk be limited to those damages arising from incidents involving the owner or operator of an uninsured motor vehicle.

OCGA § 33-7-11 (b) (1) provides a statutory definition of those motor vehicles which are deemed to be "uninsured." However, no definition is provided within the statute of the term "motor vehicle" itself and accordingly, we must examine statutes in pari materia to determine which statutory definition of a "motor vehicle," if any, applies to the uninsured motorist statute. Compare *State Farm &c. Co. v. Guest*, 203 Ga. App. 711, 712 (417 SE2d 419) (physical precedent only) where, in construing the provisions of OCGA § 33-7-11 (b) (2), the then-existing in pari materia statutes, OCGA §§ 33-34-2 (6) and 40-1-1 (33) were examined and their provisions applied. In doing so, the *Guest* court held it could not be concluded that a tire assembly was a motor vehicle within the meaning of the uninsured motorist statute. Id.

The "laws . . . relating to motor vehicles designed primarily for operation upon the public streets, roads and highways" are given in Title 40 of the Official Code of Georgia. OCGA § 40-1-1 (33) defines "motor vehicle" as "every vehicle which is self-propelled." However, the crucial inquiry defining "motor vehicle" in the insurance code (OCGA § 33-34-2 (1)) is whether a particular self-propelled vehicle is required to be *registered* under the "laws of this state relating to motor vehicles designed primarily for operation upon the public streets, roads, and highways and driven by power other than muscular power." OCGA § 33-34-2 (1). OCGA § 40-2-20 (a), promulgated in the chapter pertaining to registration and licensing of motor vehicles, requires registration of "tractors," except as provided in § 40-2-20 (b), which excepts from registration any tractor "used only for agricultural purposes." OCGA § 40-2-20 (b) (2).

The trial court correctly ruled that this farm tractor is not a motor vehicle for the purposes of uninsured motorist coverage. Although the provisions for uninsured motorist coverage are remedial in purpose and therefore must be broadly construed to accomplish the legislative purpose (*Smith v. Commercial Union Assurance Co.*, 246 Ga. 50, 51 (268 SE2d 632); *Maryland Cas. Co. v. Rhoden*, 170 Ga. App. 704, 705 (318 SE2d 175)), the construction of a statute must square with common sense and reasoning. *Tuten v. City of Brunswick*, 262 Ga. 399, 404 (7) (a) (i) (418 SE2d 367). To subject a farm tractor, which is not primarily designed to operate in an everyday driving environment upon the public roadways but is designed primarily for agricultural purposes, to a statutory categorization of "uninsured motor vehicle," does not follow a prudent rule of reason. It was not without major public policy considerations that the legislature elected to exempt farm tractors from motor vehicle registration requirements. It is sometimes but a very fine line separating legitimate statutory construction and unauthorized judicial legislation (*Oglethorpe Power Corp. v. Sheriff*, 210 Ga. App. 299, 302 (5) (436 SE2d 14)); it would cross this line to hold that a farm tractor is an uninsured motorist vehicle. Additionally, it is most reasonable to conclude that the legislature desired to provide uninsured motorist coverage for persons injured by motor vehicles designed primarily for operation upon the public streets, roads, and highways (OCGA § 33-34-2 (1)), as it is those uninsured motor vehicles which daily pose the greatest risk and danger to the public. Conversely, a farm tractor poses a far lesser degree of danger to those on public streets, roads and highways, and public policy provides no overriding reason to require such vehicles to be treated in the same manner as vehicles designed primarily for operation upon the public streets, roads, and highways.

*State Farm &c. Co. v. Guest*, supra, is factually distinguishable and not controlling as to the disposition of this case. That case did not involve a "self-propelled" vehicle but involved a tire assembly which fell off a truck.

2. We note that any vehicle used to tow a mobile home is required by law to maintain liability insurance. See Department of Transportation Rule 672-2-.03 (g), enacted pursuant to OCGA § 32-6-28, which authorizes issuance of permits for vehicles and loads exceeding certain legal weights and dimensions. The trial court's grant of partial summary judgment did not foreclose this issue but in essence determined only that this tractor was not a motor vehicle required to be registered under the Motor Vehicles Act (OCGA § 40-2-20) and hence was not required to have liability insurance under OCGA § 33-34-2 (1).

If the definition of farm tractor is to be changed in order for it to become an "uninsured motor vehicle," then the change is for the leg-

islature, not this Court. To make a farm tractor, used primarily for agricultural purposes, an uninsured motor vehicle because of one departure from its primary use is, in my opinion, not the intent of the legislature.

*Judgment affirmed. Pope, P. J., Andrews, Blackburn and Ruffin, JJ., concur and concur specially. Beasley, C. J., concurs in judgment only. McMurray, P. J., Johnson and Smith, JJ., dissent.*

BLACKBURN, Judge, concurring specially.

I concur with the majority opinion but write separately to add the following. In granting Interstate's partial motion for summary judgment, the trial court concluded that a farm tractor is not a motor vehicle for purposes of the uninsured motorist statute. That is the only issue before the Court.

The majority opinion affirms the trial court's conclusion that this case turns on the definition of "motor vehicle" under OCGA § 33-34-2 (1). The Uninsured Motorist Act (UMA), OCGA § 33-7-11, contains no definition of "motor vehicle." OCGA § 33-7-11 (b) (1) (D), simply provides when a motor vehicle is uninsured, not what an uninsured motor vehicle is. The five subdivisions thereunder all relate to the applicability of uninsured motorist coverage to the existence, the amount, or collectibility of liability coverage. Uninsured motorist coverage does not come into play unless its limits exceed available liability coverage.

Uninsured motorist coverage is a required part of motor vehicle *liability* policies under Georgia law, where the insured does not reject such coverage. OCGA § 33-7-11 (a) (1) provides in part: "No *automobile liability policy or motor vehicle liability policy* shall be issued . . . unless it contains . . . provisions undertaking to pay . . . damages from . . . an *uninsured motor vehicle,* within limits . . . at the option of the insured." (Emphasis supplied.)

"[T]he purpose in providing for uninsured motorist protection was to afford the public generally with the same protection that it would have had if the uninsured motorist had carried the same amount of coverage under a public *liability* policy issued in his name." (Emphasis supplied.) *Wages v. State Farm &c. Ins. Co.,* 132 Ga. App. 79, 83 (208 SE2d 1) (1974).

As uninsured motorist provisions are a part of the actual liability policy which is governed by OCGA § 33-34-3, it would appear that the legislature intended that the definitions related to motor vehicle liability policies contained in OCGA § 33-34-2 would apply to the uninsured motorist provisions thereof absent a specific indication to the contrary under OCGA § 33-7-11 (UMA). Otherwise, the term "Motor Vehicle" would have two different meanings in the same policy.

Both *Boston v. Allstate Ins. Co.,* 218 Ga. App. 726 (463 SE2d

155) (1995) and *Grange Mut. Cas. Co. v. Brinkley*, 182 Ga. App. 273 (355 SE2d 767) (1987) were decided on the issue of coverage based upon a "resident relative" provision of the policies and did not deal with the issue of motorcycles or the definition of "motor vehicle." I can find no Georgia appellate case which holds that a motorcycle is a "motor vehicle" for purposes of uninsured motorist coverage as said issue has not previously been raised. While it might be fair to question why such issue has not previously been raised before this Court, any conclusion would be pure speculation and cannot form a basis for determination in this case.

Title 40, Motor Vehicles and Traffic, contains the traffic laws of the State of Georgia, including the rules of the road, and the broad definition of "motor vehicle" contained at OCGA § 40-1-1 (33) is clearly needed to reduce the possibility of traffic violators avoiding conviction based upon a narrow definition of "motor vehicle" which might exclude prosecution. OCGA § 40-2-20 provides for the registration of motor vehicles and is not at issue in the present case. It would appear that the intention of the legislature in including the term "tractor" in those vehicles which require registration under OCGA § 40-2-20 was to provide primarily for those tractors which are used in tandem with trailers for the purpose of hauling freight, i.e. tractor-trailers. It would likewise appear that the primary purpose for the exclusion from registration of tractors used only for agricultural purposes under OCGA § 40-2-20 (b) was to distinguish farm tractors from those tractors used in hauling freight. In any event, the registration of motor vehicles is not involved in the present case and would not control the resolution thereof.

While the public may be well served by a change in the law which would result in uninsured motorist coverage under the facts herein involved, where the intent of the legislature is clear, as I feel it is here, any change in the law may be made only by the legislature. "Regardless of the desirability of arriving at a particular state of the law, this court has no authority to legislate." *Bieling v. Battle*, 209 Ga. App. 874 (434 SE2d 719) (1993).

I am authorized to state that Presiding Judge Pope, Judge Andrews and Judge Ruffin join in this special concurrence.

JOHNSON, Judge, dissenting.

I respectfully dissent because I believe the trial court erred by focusing on a single statutory definition of a motor vehicle in this case and did not consider the use to which the motor vehicle was being put at the time of the collision. "The purpose of uninsured motorist legislation is to require some provision for first-party coverage to facilitate indemnification for injuries to a person who is legally entitled to recover damages from an uninsured motorist, and thereby to protect

innocent victims from the negligence of irresponsible drivers. Uninsured motorist statutes are remedial in nature and must be broadly construed to accomplish the legislative purpose." (Citations and punctuation omitted.) *Smith v. Doe*, 189 Ga. App. 264, 265 (3), 266 (375 SE2d 477) (1988). I believe the majority's view improperly shifts the focus away from the goal of compensating an injured party to compensating only those victims injured by a single class of vehicles which meet one definition of motor vehicle in the Code.

The definition of motor vehicle in OCGA § 33-34-2 (1), the Code section relied on by the majority, serves only to delineate those vehicles as to which the legislature has mandated liability insurance coverage. Applying that definition of motor vehicle in other contexts produces illogical results. For example, as pointed out by the appellants, motorcycles would not satisfy the definition of motor vehicle in OCGA § 33-34-2, yet no Georgia court has held that a person involved in an accident with an uninsured motorcycle cannot seek protection through the uninsured motorist coverage of his or her own automobile insurance policy. See generally *Boston v. Allstate Ins. Co.*, 218 Ga. App. 726 (463 SE2d 155) (1995); *Grange Mut. Cas. Co. v. Brinkley*, 182 Ga. App. 273 (355 SE2d 767) (1987).

The tractor in this case does not satisfy the definition of a motor vehicle in OCGA § 33-34-2 (1), as the tractor was clearly not *designed* primarily for operation upon public roads. It does, however, satisfy the definition of a motor vehicle in numerous other provisions of the Code. OCGA § 40-1-1 (33) defines motor vehicle simply as "every vehicle which is self-propelled." OCGA § 40-2-20 (a), which defines motor vehicles in terms of those required to be registered, expressly includes tractors *unless* being used solely for agricultural purposes. OCGA § 40-2-20 (b) (2). It is clear that the tractor in the instant case was being used, illegally, to tow a mobile home. This activity can in no way be said to be an agricultural purpose. I believe that the legislature clearly intended farm tractors used for purposes other than agriculture to be included in the registration requirements. Finally, a tractor meets the broad criteria for an uninsured motor vehicle under OCGA § 33-7-11 (b) (1) (D).

"The term 'uninsured motor vehicle' was not meant to be given one definition for purposes of [one Code section] and a different definition when appearing in other parts of the Code section; such a split interpretation would be absurd." *Hall v. Regal Ins. Co.*, 202 Ga. App. 511, 513 (1) (414 SE2d 669) (1992). A farm tractor, with an engine capable of towing a 14- by 52-foot mobile home, was operating on a public highway. The tractor's presence on the highway was not merely incidental to some legitimate agricultural purpose. That the mobile home was being towed by a tractor rather than another motor vehicle which would have fit more squarely within OCGA § 33-34-2 (1) did

not diminish the injuries sustained by the plaintiff in this case. We are presented with a policyholder who paid premiums for uninsured motorist coverage. She was injured in an accident on a public highway with a motorized vehicle, which, while it may not have been designed primarily for operation on public roads, was performing the same function as a motor vehicle which is so designed. I believe the trial court erred in granting summary judgment to the insurance company.

I am authorized to state that Presiding Judge McMurray and Judge Smith join in this dissent.

DECIDED MARCH 15, 1996 —

*Howard E. Spiva, Cecil C. Davis,* for appellant.
*Chambers, Mabry, McClelland & Brooks, Clyde E. Rickard III,* for appellee.