S96G1100. HINTON v. INTERSTATE GUARANTY INSURANCE COMPANY.
(480 SE2d 842)

SEARS, Justice.

We granted certiorari in *Hinton v. Interstate Guaranty Ins. Co.*[1] to consider whether a farm tractor can be an uninsured motor vehicle for purposes of the uninsured motorist statute[2] when, in the course of a nonagricultural pursuit, it collides with another vehicle on a public highway. We answer this question in the affirmative.

Plaintiff Lynn Hinton suffered personal injuries when her car collided with a farm tractor owned by defendant Billy Kendrick. Kendrick and others were using the tractor to tow a 14-foot wide mobile home on a county road. The tractor was not registered as a motor vehicle and it was not covered by liability insurance. Hinton was insured by Interstate Guaranty Insurance Company ("IGIC") and her policy provided uninsured motorist protection.

Hinton filed suit against Kendrick and the others who were assisting in moving the mobile home, and served IGIC with a copy of

---

[1] 220 Ga. App. 699, 702 (470 SE2d 292) (1996).
[2] OCGA § 33-7-11.

the complaint and summons. IGIC filed an answer denying that any defendant was uninsured and denying that Hinton was entitled to coverage under the uninsured motorist portion of her policy. Thereafter, IGIC moved for partial summary judgment, and the trial court granted its motion, finding that "a farm tractor is not a motor vehicle for purposes of the uninsured motorist statute." Hinton appealed, and a majority of the Court of Appeals affirmed.[3] We reverse.

The uninsured motorist statute defines an "uninsured motor vehicle" as a motor vehicle as to which there is either no, or insufficient, bodily injury liability insurance and property damage liability insurance. OCGA § 33-7-11 (b) (1) (D). The statute, however, does not define the term "motor vehicle."

In the present case, the trial court and the Court of Appeals construed the term "motor vehicle" in the uninsured motorist statute to include only those motor vehicles that meet the definition of "motor vehicle" in OCGA § 33-34-2 (1), which Code section sets forth the type of vehicles required to have mandatory liability insurance under the "Georgia Motor Vehicle Accident Reparations Act."[4] The definition of motor vehicle in § 33-34-2 (1) is as follows:

> (1) "Motor vehicle" means a vehicle having more than three load-bearing wheels of a kind required to be registered under the laws of this state relating to motor vehicles designed primarily for operation upon the public streets, roads, and highways and driven by power other than muscular power. The term includes a trailer drawn by or attached to such a vehicle.

Judge Johnson, however, did not agree with the majority of the Court of Appeals, concluding in his dissent that, for purposes of the uninsured motorist statute, this definition is too restrictive, in that it defeats the remedial purpose of the uninsured motorist statute and leads to absurd results.[5] We agree with that position.

> The purpose of uninsured motorist legislation is to require some provision for first-party insurance coverage "to facilitate indemnification for injuries to a person who is legally entitled to recover damages from an uninsured motorist, and thereby to protect innocent victims from the negligence of irresponsible drivers." 7 AmJur2d 934, 935, Automobile

---

[3] *Hinton v. Interstate Guaranty Ins. Co.*, 220 Ga. App. 699, supra.

[4] OCGA §§ 33-34-1 to 33-34-8.

[5] *Hinton v. Interstate Guaranty Ins. Co.*, 220 Ga. App. at 703-705 (Johnson, J., dissenting).

Insurance, § 293. Uninsured motorist statutes are remedial in nature and must be broadly construed to accomplish the legislative purpose. Id. See *Wages v. State Farm Mutual Auto. Ins. Co.*, 132 Ga. App. 79 (208 SE2d 1) (1974); see also *McDaniel v. State Farm Mutual Auto. Ins. Co.*, 205 Va. 815 (139 SE2d 806) (1965).[6]

Limiting the definition of motor vehicle for purposes of the uninsured motorist statute to the definition set forth in § 33-34-2 (1) could lead to unjust and absurd results. For example, that limited definition would exclude motorcycles from the scope of § 33-7-11, as a motorcycle does not have three load-bearing wheels. Given that many motorcycles are designed to be driven primarily on the public highways and present a daily risk to other motorists, and given that motorcycles are themselves required by OCGA § 40-6-11 to be covered by the same insurance required for "motor vehicles" under OCGA § 33-34-1 et seq., it would be absurd to construe the term "motor vehicle" in the uninsured motorist statute so as to exclude motorcycles.

Further, and more importantly, the remedial purposes of the uninsured motorist statute mandate that the term "motor vehicle" be construed broadly to provide financial protection to innocent motorists who are injured by irresponsible drivers.[7] Given this purpose, it is clear that the term "motor vehicle," for purposes of the uninsured motorist statute, must include at least two classes of motor vehicles: (1) Motor vehicles that are designed primarily for use on the public roads and are required by law to be covered by liability insurance; and (2) motor vehicles that are not designed primarily for use on the public roads and are not required to have liability insurance, but which at the time of an accident are being operated on the public roads like a vehicle designed primarily for that purpose.[8] The former must be included because, when an owner of such a motor vehicle fails to purchase liability insurance, the motor vehicle poses a significant financial threat to innocent motorists. The latter must be included for the same reason. In this regard, when a motor vehicle that is not required to be covered by liability insurance and is not designed primarily for use on the public roads is nevertheless driven on the public roads in the same manner as a vehicle that is designed for that use, the driver of that vehicle circumvents the required insurance laws just as surely as a motorist who drives a motor vehi-

---

[6] *Smith v. Commercial Union Assurance Co.*, 246 Ga. 50, 51 (268 SE2d 632) (1980).

[7] *Smith*, 246 Ga. at 51.

[8] For purposes of this appeal, we assume that the tractor was not required to have liability insurance.

cle required to be covered by insurance but who fails to purchase it. Moreover, such a motorist poses the same risk of financial danger to innocent motorists as a person who operates a motor vehicle which must be insured under the laws of this state but is not. As the uninsured motorist act is designed to protect innocent motorists from irresponsible drivers, the term "motor vehicle" should be construed broadly to cover both of the foregoing circumstances.

Other courts have reached this result. In *Autry v. Aetna Life &c. Ins. Co.*,[9] the North Carolina Court of Appeals, in construing the term "uninsured motor vehicle," reasoned that its uninsured motorist statute was intended

> to provide financial recompense to innocent persons who receive injuries through the wrongful conduct of motorists who are uninsured and financially irresponsible. *Moore v. Insurance Co.*, 270 N.C. 532, 155 S.E.2d 128 (1967).
>
> Construing "uninsured motor vehicle" in light of the foregoing, we must conclude that the term is intended to include motor vehicles which should be insured under the [Motor Vehicle Safety and Financial Responsibility] Act but are not, and motor vehicles which, though not subject to compulsory insurance under the Act, are at some time operated on the public highways. Only in these instances is the uninsured motorists provision serving its intended purpose of complementing the original Act and furthering the financial protection accorded thereby to persons injured by motor vehicles on the public highways.[10]

Further, in *Chase v. State Farm Mut. Auto. Ins. Co.*,[11] the Arizona Supreme Court faced the issue of whether a golf cart that was designed for use off public highways could be excluded from the uninsured motorist coverage in an insurance policy without violating the uninsured motorist statute. Like the Georgia uninsured motorist statute, the Arizona statute did not define the term "motor vehicle." Reasoning that the uninsured motorist statute was designed to protect motorists on the public highway, the Arizona Supreme Court adopted the analysis of the North Carolina Court of Appeals in *Autry*, concluding that the Arizona uninsured motorist statute should protect motorists from " 'motor vehicles which should be insured . . . but are not, and motor vehicles which, though not subject to compulsory

---

[9] 242 SE2d 172 (N.C. App. 1978).
[10] Id. at 175.
[11] 641 P2d 1305 (Ariz. 1982).

insurance . . . are at some time operated on the public highways.' "[12] Having adopted this analysis, the court concluded that a policy could exclude a golf cart designed for use off the public highways for accidents occurring off the public highways.[13]

Moreover, a leading commentator on uninsured motorist coverage has endorsed the position that the term "motor vehicles" should include motor vehicles which are not subject to compulsory insurance but which are involved in accidents while "being operated on the public roads. Such a result would, of course, be consistent with what most observers and courts have viewed as an appropriate implementation of the public policy underlying the statutory mandate for the uninsured motorist coverage."[14]

For the foregoing reasons, we construe the term "motor vehicle" in OCGA § 33-7-11 broadly and remedially,[15] and hold that it includes motor vehicles that, while designed primarily to operate off the public highways, are operating on the public highways at the time of an accident. Accordingly, the tractor in this case was a motor vehicle for purposes of the uninsured motorist statute. We therefore reverse the judgment of the Court of Appeals.

*Judgment reversed. All the Justices concur, except Thompson, J., who dissents.*

THOMPSON, Justice, dissenting.

Although the uninsured motorist statute[16] does not define the term "motor vehicle," it defines an "uninsured motor vehicle" as one as to which there is either no, or insufficient, liability insurance. Thus, the true inquiry in determining whether a vehicle is an uninsured motor vehicle for uninsured motorist purposes, is whether the vehicle must be insured. See generally *Smith v. Commercial Union Assurance Co.*, 246 Ga. 50 (268 SE2d 632) (1980). In my view, this inquiry can only be answered by the legislature.

The legislature has seen fit to require liability insurance for motor vehicles "having more than three load-bearing wheels of a kind required to be registered under the laws of this state relating to motor vehicles designed primarily for operation upon the public streets, roads and highways and driven by power other than muscular power." OCGA § 33-34-2 (1). Inasmuch as the farm tractor in this case was not "designed primarily for operation upon the public streets," it does not meet this definition. Accordingly, I would hold

---

[12] Id. at 1312.
[13] Id.
[14] Widiss, A Guide to Uninsured Motorist Coverage, § 2.30 (1981 Supp.).
[15] *Smith*, 245 Ga. at 51.
[16] See OCGA § 33-7-11 (b) (1) (D).

that it was not a motor vehicle for uninsured motorist purposes.

I am not led to a contrary conclusion simply because motorcycles are required to carry liability insurance. In fact, that requirement lends strength to my view that farm tractors are not uninsured motor vehicles. After all, if the legislature could go out of its way to expressly require motorcycles to carry liability insurance, it could have also required farm tractors used on a public highway to carry such insurance. However, the legislature specifically excluded tractors from such an insurance requirement. See OCGA § 40-6-11 which requires motorcycles to carry liability insurance and reads, in part: "For purposes of this Code section, 'motorcycle' means any motor vehicle traveling on public streets or highways having a seat or saddle for the use of the rider and designed to travel on not more than three wheels in contact with the ground but excluding a tractor and a moped."

Relying solely on the remedial nature of the uninsured motorist statute, the majority would have us hold that *any* motor vehicle which is uninsured, and collides with another vehicle on a public road, is an "uninsured motor vehicle." I believe that, in so doing, the majority enters the legislative realm without authority. Accordingly, I respectfully dissent.

DECIDED FEBRUARY 24, 1997.

*Howard E. Spiva, Cecil C. Davis,* for appellant.
*Chambers, Mabry, McClelland & Brooks, Clyde E. Rickard III,* for appellee.