**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN, and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 20, 2023**

# In the Court of Appeals of Georgia

A23A1161. NATIONWIDE AGRIBUSINESS INSURANCE COMPANY v. THE ONIONMAN COMPANY, LLC et al.

MCFADDEN, Presiding Judge.

At issue in this case is whether a business automobile insurance policy provides uninsured/underinsured motorist (UM) coverage and, if it does not, the merits of a claim for negligent failure to procure insurance.

Shad Dasher was injured in a vehicle collision while operating a tractor belonging to two companies that he owned: The Onionman Company, LLC and Vidalia Organics, Inc. (collectively, "the companies"). Nationwide Agribusiness Insurance Company had issued a business automobile policy to the companies. Nationwide took the position that the tractor was not included in the policy's UM coverage. In response Dasher and the companies filed an action against Nationwide,

asserting claims for declaratory judgment, breach of contract, and negligent failure to procure insurance. (Dasher and the companies also asserted the negligent procurement claim against an insurance agency, South Georgia Insurance Associates, LLC, hereinafter "the insurance agency" or "the agency," which is not a party to this appeal.)

The trial court granted summary judgment to Dasher and the companies on their claims against Nationwide and denied Nationwide's cross-motion for summary judgment on those claims. Nationwide appeals.

As detailed below, we find that, as a matter of law, the policy does not provide UM coverage for the tractor, so Nationwide is entitled to summary judgment on the claims for declaratory judgment and breach of contract. We also find that Dasher and the companies have not pointed to evidence creating a genuine issue of material fact on their claim against Nationwide for negligent procurement of insurance. So we reverse the judgments on the cross-motions for summary judgment.

1. *Facts and procedural history*

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. . . . [A] de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all

2

reasonable conclusions and inferences drawn from it, in the light most
favorable to the nonmovant.

*Hunter v. Progressive Mountain Ins. Co.*, 353 Ga. App. 444 (838 SE2d 112) (2020)
(citation and punctuation omitted). So viewed, the evidence shows the following.

(a) *The companies seek insurance and receive a proposal*

Dasher's companies grow Vidalia onions. In 2015, Dasher spoke with John
Paul Ewaldsen, the managing member of the insurance agency, about obtaining a
package of insurance, including business auto insurance, for the companies' farming
operations. Nationwide and the insurance agency had an agreement under which the
agency would write certain types of Nationwide policies and Nationwide would
provide the agency with various services in support thereof. The agency also wrote
farm policy packages for other insurance carriers.

Dasher's companies submitted to the agency an insurance application in which
they requested, among other things, a business auto policy that provided UM
coverage for "All Owned Autos" and liability coverage for "Autos Specified on
Schedule." But Dasher did not specifically discuss UM coverage with Ewaldsen. The
application quoted a premium and stated: "Coverage is not bound and no coverage
will be afforded by this quotation. This insurance quote is not a part of the insurance

3

policy. If there is any discrepancy in the coverages shown in this quote and that of the actual policy issued, the policy coverages will prevail."

The insurance agency then provided the companies with a proposal for insurance from Nationwide that included business auto insurance. Consistent with the application, the proposal quoted a premium for UM coverage for "All Owned Autos" and a premium for liability coverage for "Autos Specified on Schedule." And like the application, the proposal stated: "Coverage is not bound and no coverage will be provided by the quotation. This insurance quote is not a part of the insurance policy. . . . If there is any discrepancy in the coverages shown in this quote and that of the actual policy issued, the policy coverages will prevail."

(b) *The business auto policy*

Nationwide ultimately issued a business auto policy to the companies as part of a larger package of insurance. The initial policy was in effect from September 1, 2015 to September 1, 2016, and the companies renewed it for subsequent years without changing the coverage.

The business auto policy provides liability and UM coverage, among other types of coverage, to specific categories of "autos." a defined term under the policy. It expressly defines which "autos" fell within each category by referring to numeric

4

symbols placed next to each of the specific types of coverage under "ITEM TWO" of the policy's declarations page. The declarations page states:

> This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos." "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTOS section of the Business Auto or Motor Carrier Coverage Form next to the name of the coverage.

The declarations page shows that the policy provides UM coverage for "autos" designated by numeric symbol 7 and liability coverage for "autos" designated by numeric symbols 7 and 19. Symbol 7 pertains to "autos" that were specifically described on a schedule under another part of the declarations page. Symbol 19 pertains to "autos" that were land vehicles and that would fall under the policy's definition of "mobile equipment," except for the fact that they were subject to compulsory insurance laws. (The specific language that the policy uses to define the terms "auto" and "mobile equipment" and to describe these symbols is detailed in the analysis below.)

5

Notably, although the business auto policy includes another numeric symbol for all "Owned 'Autos,'" the declarations page of the companies' policy in this case does not refer to that symbol when describing either the liability or UM coverage provided. So although Dasher had requested UM coverage for "All Owned Autos" and the agency had included that request in the proposal, the policy expressly provides UM coverage to only some of the autos for which it provided liability coverage.

(c) *Dasher's accident and efforts to obtain UM compensation*

On November 1, 2017, Dasher was driving a tractor belonging to one of the companies on a public road when he was rear-ended by another vehicle. At the time, Dasher was engaged in agricultural business, traveling from a field where he had been working with the tractor to another location to pick up some fertilizer. Dasher was seriously injured in this accident, and he ultimately obtained a judgment against the other driver for $464,872.40. The other driver had liability insurance and his insurance company paid Dasher the policy limits of $25,000.

After the accident, the insurance agent, Ewaldsen, told Dasher that the UM coverage in the companies' business auto policy would apply. Dasher sought to

6

recover the remainder of his judgment from Nationwide, but Nationwide declined to pay.

Dasher and the companies brought this action against Nationwide and the insurance agency. They asserted that Nationwide breached a duty under the policy to provide UM coverage on the tractor and they sought declarations that the policy provides such coverage and that the UM coverage applies to the injuries Dasher sustained in the accident. Alternatively, they asserted a claim against Nationwide and the agency for "negligent failure to procure and provide" UM coverage.

Dasher and the companies filed a motion for partial summary judgment against Nationwide, and Nationwide filed a cross-motion for summary judgment. The trial court granted the plaintiffs' motion and denied Nationwide's motion.

2. *Declaratory judgment and breach of contract*

On appeal, Nationwide argues that the trial court erred in finding that the policy affords UM coverage for the tractor, which was the basis for the grant of partial summary judgment to Dasher and the companies on the claims for declaratory judgment and breach of contract. We agree with Nationwide that, as a matter of law, the policy does not provide the claimed UM coverage.

We construe insurance policies under settled rules of law.

7

As with any contract, in construing the terms of an insurance policy, we look first to the text of the policy itself. Words used in the policy are given their usual and common meaning, see OCGA § 13-2-2 (2), and the policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or attorney. Where the contractual language is explicit and unambiguous, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured. This is so because Georgia law permits an insurance company to fix the terms of its policies as it sees fit, so long as they are not contrary to the law, thus companies are free to insure against certain risks while excluding others. However, when a policy provision is susceptible to more than one meaning, even if each meaning is logical and reasonable, the provision is ambiguous and, pursuant to OCGA § 13-2-2 (5), will be construed strictly against the insurer/drafter and in favor of the insured.

*Ga. Farm Bureau Mut. Ins. Co. v. Smith*, 298 Ga. 716, 718 (784 SE2d 422) (2016) (citations and punctuation omitted).

As detailed below, we find that the business auto policy unambiguously does not afford UM coverage for the tractor. The tractor is not one of the scheduled vehicles expressly afforded UM coverage under symbol 7. And contrary to the position taken by Dasher and the companies, the tractor does not fall within the category of autos afforded liability coverage under symbol 19, which would by

8

operation of law also have UM coverage unless the companies rejected such coverage in writing. Because "[t]he policy must be enforced against [the companies] as written[,]" *Kinard v. Nat. Indem. Co.*, 225 Ga. App. 176, 178 (1) (483 SE2d 664) (1997), the companies are not entitled to summary judgment as to either their claim for declaratory judgment or their claim for breach of contract, and Nationwide is entitled to summary judgment on those claims.

(a) *The policy does not expressly provide UM coverage for the tractor*

The policy language does not expressly provide UM coverage for the tractor. The policy designates symbol 7 to describe the vehicles for which it provides UM coverage. That symbol pertains to "Specifically Described 'Autos.'" The policy defines "Specifically Described 'Autos'" as "[o]nly those 'autos' described in Item Three of the Declarations for which a premium charge is shown. . . ." And Item Three is a "Schedule of Covered Autos You Own" on which the tractor is not listed.

(b) *The policy does not provide UM coverage for the tractor by operation of law*

Dasher and the companies argue that the tractor nevertheless has UM coverage because the policy extends liability coverage to the tractor under symbol 19, and liability coverage entails UM coverage by operation of law. Automobile liability

9

policies issued in Georgia must provide for certain amounts of UM coverage unless the insured rejects such coverage in writing. OCGA § 33-7-11 (a) (1), (3). See *Hunter v. Progressive Mountain Ins. Co.*, 353 Ga. App. 444, 445 (838 SE2d 112) (2020). "When an insurer issues a policy with provisions not in compliance with the law[,] the provisions of the statute will be grafted into the policy." *Southern Gen. Ins. Co. v. Mathis*, 183 Ga. App. 823, 826 (2) (360 SE2d 19) (1987) (citation and punctuation omitted). So OCGA § 33-7-11 (a) (1) "make[s] a policy's liability limits the default provision for UM coverage in the absence of an affirmative election of UM coverage in a lesser amount." *Jones v. Ga. Farm Bureau Mut. Ins. Co.*, 367 Ga. App. 35, 38 (1) (885 SE2d 13) (2023) (citation and punctuation omitted). It follows, argue Dasher and the companies, that if the business auto policy provides liability coverage for the tractor under symbol 19, then by operation of law it also provides UM coverage for the tractor.

We disagree. As detailed below, under the language of the policy the dispositive question in determining if the tractor falls within symbol 19 is whether Georgia law requires the tractor to have liability coverage. The statutes governing that issue, OCGA §§ 33-34-4 and 40-2-20 (b) (2), do not require the tractor to have

10

liability coverage. And we are not persuaded by Dasher's argument that Georgia Supreme Court precedent requires the tractor to have liability coverage.

(i) *In determining if the tractor falls within symbol 19, the dispositive question is whether Georgia law requires the tractor to have liability insurance*

In determining if the tractor falls within symbol 19, and thus has liability coverage under the policy, we look to the policy language. Symbol 19 is titled "Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law" and encompasses "[o]nly those 'autos' that are land vehicles and that would qualify under the definition of 'mobile equipment' under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged." In other provisions, the policy defines the terms "auto" and "mobile equipment"; and under those contractual definitions, the two terms are mutually exclusive.

The term "auto" is defined as "(1) A land motor vehicle, 'trailer' or semitrailer designed for travel on public roads; or (2) Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. *However, 'auto' does not include 'mobile equipment*.'" (Emphasis supplied.) Compare *McDuffie v. Coweta County*, 299 Ga.

11

App. 500, 503-504 (2) (682 SE2d 609) (2009) (tractor held to be an "auto" under policy that did not exclude "mobile equipment" from the definition of "auto").

The term "mobile equipment" is defined as any of a list of land vehicles that includes "farm machinery . . . designed for use principally off public roads[.]" But the definition of "'mobile equipment' excludes land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered 'autos'."

So defined, "autos" and "mobile equipment" are mutually exclusive categories of land vehicles. Where a vehicle falls within the list contained in the definition of "mobile equipment," it is categorized as "mobile equipment" *unless* it is "subject to a compulsory or financial responsibility law or other motor vehicle insurance law." But if it is subject to such a law, then it is categorized as an "auto."

As stated above, symbol 19 covers "'autos' . . . that would qualify under the definition of 'mobile equipment' . . . *if they were not* subject to a compulsory or financial responsibility law or other motor vehicle insurance law. . . ." (Emphasis supplied.) The tractor in this case "would qualify under the definition of 'mobile equipment'" because it is "farm machinery . . . designed for use principally off public

12

roads[.]" So for the tractor to instead be an "auto" that falls within symbol 19, it must be "subject to a compulsory or financial responsibility law or other motor vehicle insurance law[.]" As detailed below, the tractor in this case is not subject to such a law.

(ii) *Georgia statutory law does not require the tractor to have liability insurance*

Georgia law mandates liability insurance coverage for the operation of motor vehicles that are "required to be registered in this state. . . ." OCGA § 33-34-4. Tractors are *not* required to be registered in Georgia if they are "used only for agricultural purposes." OCGA § 40-2-20 (b) (2). Dasher and the companies do not argue or point to evidence that the tractor was used for any nonagricultural purposes. Instead, Dasher testified that the tractor's purpose was to spread fertilizer, and he was engaged in that activity when the accident occurred. Because the tractor was not used for anything other than agricultural purposes, and thus was not required to be registered under Georgia law, it was not required by OCGA § 33-34-4 to have liability insurance.

(iii) *Our Supreme Court precedent does not require the tractor to have liability insurance*

13

Dasher and the companies argue that the tractor was required to have liability insurance under a decision of our Supreme Court, *Hinton v. Interstate Guar. Ins. Co.*, 267 Ga. 516 (480 SE2d 842) (1997), which they assert stands for the proposition that all tractors operated on public roads must have liability insurance. We disagree, because *Hinton* does not address the question of whether tractors operated on public roads must have liability insurance. Instead, *Hinton* addresses a different question: "whether a farm tractor can be an uninsured motor vehicle for purposes of the uninsured motor vehicle statute when, in the course of a nonagricultural pursuit, it collides with another vehicle on a public highway." *Hinton*, 267 Ga. at 516 (citation omitted). And the facts of *Hinton*, including which party was operating the tractor, are different than the facts of this case in meaningful ways.

The plaintiff in *Hinton*, the driver of a car that undisputedly had UM coverage, was injured in a collision with a tractor that was being used for a nonagricultural purpose: to tow a mobile home on a public road. The tractor, which was the vehicle at fault in the accident, was not registered as a motor vehicle and did not have liability insurance. When the injured driver of the car sought to recover from her own UM insurance carrier, the carrier successfully obtained partial summary judgment from the trial court on the ground that the tractor was not an uninsured "motor vehicle" for

14

purposes of the UM statute, OCGA § 33-7-11. See *Hinton*, 267 Ga. at 516-517. We affirmed that ruling, but our Supreme Court reversed, holding that the term "motor vehicle" in the UM statute "includes motor vehicles that, while designed primarily to operate off the public highways, are operating on the public highways at the time of an accident." Id. at 520.

In doing so, the Supreme Court in *Hinton* did not hold that the driver of the tractor was actually required by law to obtain liability insurance to cover the tractor before taking it on a public road. To the contrary, the Court assumed for purposes of its analysis that the tractor in *Hinton* was *not* required to have liability insurance. See *Hinton*, 267 Ga. at 518 n. 8. Instead, the *Hinton* Court held that when deciding if a tractor driven by a tortfeasor was an uninsured "motor vehicle" under the UM statute, it did not matter whether or not the tractor was required to have liability coverage. In either case, the injured plaintiff was entitled to the UM benefits that were undisputedly a part of the insurance policy that covered the plaintiff's car. See id.

Here, unlike in *Hinton*, the parties do not dispute whether the tortfeasor's vehicle was an uninsured motor vehicle under the UM statutes. Instead, they dispute whether the injured plaintiff's vehicle had UM coverage, a matter that was not contested in *Hinton* and that in this case turns on whether the companies' insurance

policy included the tractor in its liability coverage. Simply put, the considerations that existed in *Hinton* are not present in this case, and *Hinton* is not authority for the broad proposition advanced by Dasher and the companies, that Georgia law requires all tractors driven on public roads to have liability coverage. Cf. *American Ins. Co. v. Hornton*, No. 3:15-cv-00111-TCB, 2017 U. S. Dist. LEXIS 170827, 2017 WL 3498705 (N. D. Ga. Mar 27, 2017) (concluding that *Hinton* did not apply to facts similar to this case).

(c) *Summary*

In summary, the policy's declarations page states that it provides liability coverage to autos described by symbols 7 and 19. The tractor is not covered under symbol 7 because it is not listed on the schedule of covered autos. And the tractor is not covered under symbol 19 because it is not "subject to a compulsory or financial responsibility law or other motor vehicle insurance law," given that it is not required to be registered and thus is not required by law to have liability insurance coverage.

In reaching this conclusion, we acknowledge that the language of symbol 19 is confusing. Its title and wording suggest that it applies to "mobile equipment" when in fact it applies to "only . . . 'autos'. . . ," a category that expressly excludes "mobile equipment." And it requires a reader to both cross-reference other provisions of the

16

policy and look to applicable Georgia laws to understand the scope of the coverage. It is true that a policy may require such acts by a reader. See *Hardman v. Hardman*, 295 Ga. 732, 736 (3) (b) (763 SE2d 861) (2014) ("The laws which exist at the time and place of the making of a contract, enter into and form a part of it; and the parties [are] presumed to have contracted with reference to such laws and their effect on the subject matter.") (citation and punctuation omitted); *Unique Auto Sales v. Dunwoody Ins. Agency*, 369 Ga. App. 50, 56 (1) (b) (__ SE2d __) (2023) (language establishing exclusion in insurance policy was not ambiguous even though it required cross-referencing other policy provisions). But in the case of symbol 19, the need to cross-reference other provisions and construe Georgia law serves to obscure its meaning.

"Whenever the phrasing of an insurance policy is so confusing that an average person could not make out the boundaries of the coverage, there is a genuine ambiguity in the policy." *Isdoll v. Scottsdale Ins. Co.*, 219 Ga. App. 516, 518 (1) (466 SE2d 48) (1995). In our view, symbol 19 toes this line. Nevertheless, we conclude that the policy is not ambiguous because, despite symbol 19's lack of clarity, there is no reasonable interpretation of the policy that would extend liability coverage to a vehicle that is neither specifically listed on the schedule of covered autos nor required by law to have liability coverage.

17

Because the unambiguous language of the policy did not afford UM coverage to the tractor, either expressly or by operation of law, it does not matter that the companies' insurance agent, Ewaldsen, testified to a different understanding of the policy's meaning. Extrinsic evidence cannot vary the terms of an unambiguous contract. *Infinity Gen. Ins. Co. v. Litton*, 308 Ga. App. 497, 501 (767 SE2d 885) (2011).

And we are not persuaded by Dasher and the companies' argument that construing the policy in this way would make the policy's liability coverage "illusory." See generally *Isodoll*, 219 Ga. App. at 518 (1) (Georgia law rejects constructions that render a policy's coverage illusory). Under this construction, the policy provides liability coverage to all scheduled vehicles along with any farm equipment that is required by law to be registered and have liability coverage.

For these reasons, we hold that Nationwide is entitled to summary judgment on the claims for declaratory judgment and breach of contract.

3. *Negligent failure to procure and provide insurance*

Nationwide also argues that the trial court erred in alternatively finding that, if the policy did not provide UM coverage, Dasher and the companies were entitled to summary judgment on their claim against Nationwide for negligent failure to

18

procure and provide UM coverage. In so ruling, the trial court focused on the discrepancy between the coverage reflected in the application materials and proposal and that provided by the policy, which the trial court attributed to negligence on Nationwide's part. We agree with Nationwide that the trial court erred and that this claim fails as a matter of law.

Georgia law provides that "[a]n agent who negligently fails to procure insurance for his principal is liable to the principal for any resulting loss." *Wright Body Works v. Columbus Interstate Ins. Agency*, 233 Ga. 268, 270 (210 SE2d 801) (1974). But "[a]s a general rule, an insured has a duty to read and examine an insurance policy to determine whether the coverage requested was procured." *Traina Enterprises v. Card & Wilburn, Inc. Ins. Agency*, 289 Ga. App. 833, 837 (658 SE2d 460) (2008). "[I]f examination of the policy would have made it readily apparent that the insured did not get the coverage he requested, the duty to read will still bar a lawsuit against the agent even if the insured relied upon the agent's expertise." *Unique Auto Sales*, 369 Ga. App. at 54 (1) (citation and punctuation omitted).

The evidence shows that although the companies applied for a broader range of UM coverage and received a proposal from their agent reflecting that broader coverage, that application and proposal both explicitly stated that in the case of a

19

discrepancy with the policy, the policy's terms would govern. It is readily apparent from the policy's declarations page that the categories of vehicles for which liability and UM coverage is provided differ from what was shown on the application and proposal. Consequently, Dasher and the companies were "obligated to examine the insurance policy and to reject it if it did not furnish the desired coverage." *Martin v. Chasteen*, 354 Ga. App. 518, 520 (2) (a) (841 SE2d 157) (2020) (citation and punctuation omitted).

Dasher and the companies argue that they were excused from this obligation because they relied on the expertise of Ewaldsen, who was acting as a dual agent for both them and Nationwide. But as stated above, reliance upon an agent's expertise will not excuse an insured from this obligation if the discrepancies are readily apparent. *Unique Auto Sales*, 369 Ga. App. at 53-54 (1). In addition, "[i]ndependent insurance agents or brokers are generally considered the agent of the insured, not the insurer[,]" *European Bakers v. Holman*, 177 Ga. App. 172, 173 (2) (338 SE2d 702) (1985), and Dasher and the companies do not point to evidence showing that the insurance agency and Ewaldsen also served as Nationwide's agent in this case. See *Kirby v. Northwestern Nat. Cas. Co.*, 213 Ga. App. 673, 678-679 (2) (445 SE2d 791) (1994) (holding that as a matter of law an independent insurance agent was not

functioning as a dual agent where, among other things, he had no independent authority to bind the insurer or contract on its behalf).

Finally, we note that Dasher and the companies point to no authority that imposes a general duty upon an insurer, as opposed to an agent, related to the procurement of insurance that provides the coverage sought by the insured. They cite *Pennsylvania Millers Mut. Ins. Co. v. Thomas Milling Co.*, 137 Ga. App. 430 (224 SE2d 55) (1976), but that decision is inapposite; it concerned a narrower duty "arising from a course of dealing, in which the insurer made [physical] inspections [of equipment] and reports [of deficiencies], attended by the insured's reliance thereupon." Id. at 432 (2). There is no evidence whatsoever of a similar course of dealing between the companies and Nationwide in this case.

For these reasons, we hold that Nationwide is entitled to summary judgment on the claim for negligent procurement of insurance.

*Judgment reversed. Brown and Markle, JJ., concur*.

21