### S97G1607. DANIELS et al. v. JOHNSON.
(509 SE2d 41)

FLETCHER, Presiding Justice.

We granted certiorari to consider the scope of the requirement that a plaintiff exhaust available liability coverage as a prerequisite to recovery of uninsured motorist benefits. Because the plaintiff met the exhaustion requirement by settling his claim for the policy limits as stated in the policy, we reverse the Court of Appeals of Georgia.[1]

Lawrence Daniels brought suit against Sheree Johnson for injuries arising out of an automobile accident that occurred in Georgia and served his uninsured motorist (UM) carrier. Johnson was covered personally by a $10,000 liability policy and her rental car was covered by a $10,000 policy from Chrysler Insurance through the rental car agency in New York. Daniels settled with Johnson's insurance providers for $10,000 each and executed releases pursuant to OCGA § 33-24-41.1. Daniels then sought additional sums from his

---

[1] *Daniels v. Johnson*, 226 Ga. App. 789 (487 SE2d 504) (1997).

UM carrier. The trial court granted the UM carrier's motion for summary judgment on the ground that Daniels had failed to exhaust availability coverage, a condition precedent to the UM claim, because under OCGA § 33-34-3 (a) (2), the "deemer" statute, the Chrysler policy was deemed to provide $15,000 in coverage.[2] The court of appeals affirmed.

1. The court of appeals correctly held that a party must exhaust available liability coverage before recovering under a UM policy. OCGA § 33-7-11 (b) (1) (D) (ii) specifically contemplates exhaustion by limiting the definition of uninsured to "the difference between the available coverages under the bodily injury liability insurance . . . and the limits of the uninsured motorist coverage." Furthermore, the requirement of exhaustion is seen in the legislative scheme in OCGA § 33-24-41.1 (a), and (d), which provide that, when multiple insurance carriers are involved, a claimant may settle with one for "the limits of [the] policy" and grant a limited release without compromising claims under any other policy of insurance.

2. The limits of the Chrysler policy as stated in the policy were $10,000. We conclude that a settlement for the limits as stated in the policy satisfies the exhaustion requirement, even though under the deemer statute the Chrysler policy provides $15,000 in coverage. This rule is most consistent with the purpose behind OCGA § 33-24-41.1, the statute permitting a limited release.

The legislature enacted OCGA § 33-24-41.1 in 1992 to make meaningful the ability of a claimant to settle with the tortfeasor's insurance carrier while preserving his UM claim.[3] Prior to its enactment, a UM carrier was entitled to insist on a judgment in excess of the liability policy limits before fixing coverage under its policy.[4] Therefore, a claimant could not maintain an action against his own UM carrier if he had settled with the tortfeasor's carrier without the agreement of the UM carrier. OCGA § 33-24-41.1 (c) changed this circumstance by expressly providing that UM policies cannot require permission of the UM carrier before a claimant settles with a liability carrier. Thus, the statute eased both the process of plaintiffs' recovering for their injuries and the process of resolving lawsuits. The rule we announce today furthers those goals by looking solely to the face of the policy for the limits available. This rule also has the advantage of allowing the parties to focus on the issue of liability and damages.

The court of appeals relied on the increased coverage under the deemer statute to hold that Daniels failed to exhaust all available

---

[2] See *Bankers Ins. Co. v. Taylor*, 267 Ga. 134 (475 SE2d 619) (1996) (upholding constitutionality of OCGA § 33-34-3 (a) (2).

[3] See 11 Ga. St. L. Rev. 200 (1994) (legislative history of OCGA § 33-24-41.1.).

[4] Id.; Jenkins & Miller, *Georgia Automobile Insurance Law* § 13-5 (1997).

coverage and, therefore, forfeited his claim under his own UM coverage. This rationale has the anomalous effect of using the deemer statute, which is intended to benefit citizens driving on Georgia roads, to preclude its intended beneficiary from recovering under his own UM policy. Such a result is inconsistent with the policy underlying the deemer statute and must be rejected.

The special concurrence would hold that any settlement for less than the policy limits satisfies the exhaustion requirement, as long as it is in good faith. Such a rule, however, would subvert the legislatively created exhaustion requirement. In enacting OCGA § 33-24-41.1, the legislature carefully preserved the exhaustion requirement by providing that a limited release under one policy will not compromise the claim under other policies when the settlement is for "the limits of such policy."[5] It is within the province of the legislature to consider whether a party who settles with the tortfeasor's insurance carrier for less than the policy amount may thereafter pursue his own carrier. Additionally, such a rule unduly complicates the resolution of an automobile accident case. To determine whether a settlement for less than policy limits was in good faith, the trial court will have to hold a mini-trial that will delay the plaintiff's recovery, will inquire into plaintiff's counsel's thought processes, and may even require discovery from the settling carrier.

For these reasons we hold that if the plaintiff settles for the limits of the policy as stated in the policy and executes a limited release in accordance with OCGA § 33-24-41.1, the plaintiff may pursue his UM claim. To balance the equities we also hold that the UM carrier may plead and prove the availability of coverage under the deemer statute and thus have its liability reduced by the amount the plaintiff waived under that statute.

*Judgment reversed. All the Justices concur, except Benham, C. J., Hunstein and Hines, JJ., who concur specially.*

HINES, Justice, concurring specially.

I write separately because the rule fashioned today by the majority effectively precludes an insured from obtaining expeditious relief by settlement with the tortfeasor's liability insurance carrier, and thus, is contrary to the very purpose of uninsured motorist coverage.

We granted review to consider the Court of Appeals' determinations that plaintiff Daniels was required to exhaust available liability coverage as a condition precedent to a claim under his own policy for uninsured/underinsured motorist (UM) benefits, and that Daniels failed to do so. I agree that exhaustion of liability coverage is a statu-

---

[5] OCGA § 33-24-41.1 (a), (d).

tory prerequisite to recovery of UM benefits and that the judgment of the Court of Appeals must be reversed because the Daniels' settlement of claims under the available liability coverage satisfied the requirement. However, mandating that an insured "settle" for the face limits of the liability policy in order to satisfy the exhaustion requirement is in reality a call to litigate.

Uninsured motorist legislation is to provide for insurance coverage in order to facilitate indemnification for injuries to a person legally entitled to recover damages from an uninsured motorist, and thereby, protect innocent victims from the negligence of irresponsible drivers. Uninsured motorist statutes are, by nature, remedial and are to be broadly construed to accomplish the legislative goal. *Hinton v. Interstate Guaranty Ins. Co.*, 267 Ga. 516, 517 (480 SE2d 842) (1997). As the majority acknowledges, the legislature enacted OCGA § 33-24-41.1, allowing a limited release, in order to provide a meaningful mechanism whereby a claimant/insured could *settle* with the tortfeasor's insurer and still avail himself of his UM coverage. Thus, for the purpose of the exhaustion requirement, an insured who enters into a good faith settlement with a tortfeasor's liability insurance carrier should be considered to have received the liability policy limits and thus, eligibility for uninsured/underinsured motorist coverage. Otherwise, the insured is effectively barred from settling his claim against the tortfeasor for an amount less than the tortfeasor's limits of liability, or he suffers the penalty of completely forfeiting UM benefits. Other jurisdictions have reached similar conclusions. See, e.g., *In re Estate of Rucker*, 442 NW2d 113 (Iowa 1989); *Schmidt v. Clothier*, 338 NW2d 256 (Minn. 1983). The reasoning is that to require an insured to litigate every claim to obtain coverage limits would defeat both the important policy favoring settlement of lawsuits and the underlying compensatory purpose of uninsured motorist coverage by delaying the payment of claims and by increasing the costs and burdens borne by the insured in attempting to obtain compensation. Appleman, 8C Insurance Law & Practice, § 5108. Such a rule balances public policy concerns with the interests of both the insurer and the insured. It does so by allowing the insured to settle with the tortfeasor for less than the limits of the tortfeasor's liability insurance and still obtain UM benefits, but requiring that liability for UM coverage is triggered only when the insured's damages exceed the actual limit of the tortfeasor's liability insurance. The insured is held responsible for any gap between the amount of the settlement and the tortfeasor's liability limits. Id. This result comports with the express definition of *available coverages* contained in OCGA § 33-7-11 (b) (1) (D) (ii). What is more, it is powerful motivation for the insured to obtain the maximum possible settlement, in accord with the letter and spirit of the exhaustion requirement. When he does so,

he has settled in good faith.

The Daniels obtain relief today because of the peculiar circumstances of their case, but the harsh line drawn by the majority ensures that other policyholders will not be so fortunate.

I am authorized to state that Chief Justice Benham and Justice Hunstein join in this special concurrence.

DECIDED DECEMBER 4, 1998.

*Beauchamp & Associates, Robert M. Beauchamp, Patrick S. Eidson,* for appellants.

*Watson, Spence, Lowe & Chambless, John M. Stephenson,* for appellee.