295 Ga. 487
FINAL COPY

S13G1048.  CARTER v. PROGRESSIVE MOUNTAIN INSURANCE.

HINES, Presiding Justice.

This Court granted a writ of certiorari to the Court of Appeals in *Carter v. Progressive Mountain Ins.*, 320 Ga.  App. 271 (739 SE2d 750) (2013), to determine if that Court properly applied the motor vehicle insurance limited liability release provision of  OCGA § 33-24-41.1.[1]  Finding that the Court of

_____

[1] OCGA § 33-24-41.1 reads:

(a) In any instance where a claim arising out of a motor vehicle accident is covered by two or more insurance carriers, one such carrier may tender, and the claimant may accept, the limits of such policy; and, in the event of multiple claimants, the settling carrier may tender, and the claimants may accept, the limits of the policy pursuant to a written agreement between or among the claimants. Such claimant or claimants may execute a limited release applicable to the settling carrier and its insured based on injuries to such claimants including, without limitation, claims for loss of consortium or loss of services asserted by any person.

(b) The limited release provided for in subsection (a) of this Code section shall:

(1) Release the settling carrier from all liability from any claims of the claimant or claimants based on injuries to such claimant or claimants; and

(2) Release the insured tort-feasor covered by the policy of the settling carrier from all personal liability from any and all claims arising from the occurrence on which the claim is based except to the extent other insurance coverage is available which covers such claim or claims.

(c) No policy of uninsured or underinsured motorist coverage issued in this state after July 1, 1994, shall prohibit any claimant from settling any claim with a liability carrier as provided in subsection (a) of this Code section or require the permission of the uninsured or underinsured motorist carrier to so settle any claim with the liability carrier.

(d) The limited release of the settling carrier provided for in subsection (a) of

Appeals erred, we reverse that Court's judgment.

Velicia Carter ("Carter") was injured in a February 22, 2010 automobile collision with Jeova Claudino Oliviera ("Oliviera"); it was alleged that Oliviera was under the influence of alcohol at the time. Oliviera had an auto liability insurance policy with GEICO General Insurance Company ("GEICO") with a $30,000 per person liability limit. Carter was insured by Progressive Mountain Insurance ("Progressive"), including uninsured/underinsured motorist ("UM")

---

this Code section shall not:

(1) Bar a claimant's recovery against any other tort-feasor or under any other policy of insurance or release any other insurance carrier providing applicable coverage unless specifically provided for in such release;

(2) Be admissible in evidence before the trier of fact in the trial of a tort action, but the amount paid thereunder shall be admissible as provided by law as evidence of the offset against the liability of an uninsured motorist carrier and as evidence of the offset against any verdict of the trier of fact;

(3) Affect any duty the settling carrier owes to its insured under its policy including, without limitation, the duty to defend a subrogation claim brought against its insured; or

(4) Release the tort-feasor from personal liability to the extent that there is other insurance in effect which covers the said claim or claims, but only to the extent of such other insurance.

(e) The provisions of this Code section shall not be construed so as to interfere with the obligation of the insured to cooperate in his or her defense with the insurance carrier as provided in the policy of insurance.

(f) The provisions of this Code section shall not be construed to interfere with a claimant's right to pursue claims or an insurance company's obligation to pay claims based on a negligent or bad faith refusal to settle a claim or claims; provided, however, that the provisions of this subsection shall not be construed to create any new claim not otherwise provided by law.

2

coverage of $25,000 per person. Carter sued Oliviera and served Progressive as her UM carrier, and entered into a settlement in which GEICO paid the $30,000 limit of Oliviera's policy, and Carter executed a limited liability release pursuant to OCGA § 32-24-41.1; it allocated $29,000 of GEICO's payment to punitive damages and $1,000 to compensatory damages. Progressive answered the suit as Carter's UM carrier and sought summary judgment on the UM claim, which the trial court granted, ruling that, by imposing the condition that $29,000 of the liability coverage limit be allocated to the payment of punitive damages, Carter failed to meet a prerequisite for recovery of the UM benefits. The Court of Appeals affirmed, finding that, by allocating a portion of the payment to punitive damages, rather than allocating all of the payment to compensatory damages, Carter failed to exhaust the limits of Oliviera's liability policy, and, therefore, forfeited the ability to make a claim on her UM policy, concluding that OCGA § 32-34-41.1 allows an injured party to settle a claim and then recover UM benefits "only to the claimant's actual injuries or losses and not to punitive damages." *Carter*, supra at 274. Further facts can be found in the opinion of the Court of Appeals.

The Court of Appeals was correct that the legislative scheme for uninsured

3

motorist insurance requires "that a party must exhaust available liability coverage before recovering under a UM policy." *Daniels v. Johnson*, 270 Ga. 289, 290 (1) (509 SE2d 41) (1998). And, that Court was also correct to note that

> the limited release provisions of OCGA § 33-24-41.1 were enacted to provide a statutory framework for a claimant injured in an automobile accident to settle with the tortfeasor's liability insurance carrier for the liability coverage limit while preserving the claimant's pending claim for underinsured motorist benefits against the claimant's own insurance carrier. [Cits.] The statute authorizes the injured claimant to settle with the tortfeasor's insurance carrier by accepting payment of the carrier's limits of liability coverage in return for the claimant's execution of "a limited release applicable to the settling carrier and its insured based on injuries to such claimants. . . ." OCGA § 33-24-41.1 (a), (b). The limited release provided for in the statute releases the settling insurance carrier from any liability to the claimant, and releases the tortfeasor from personal liability while preserving the claimant's right to pursue claims to judgment against the tortfeasor for the purpose of collecting against other available insurance coverage including underinsured motorist coverage. OCGA § 33-24-41.1 (b). [Cits.]

*Carter*, supra at 273-274. However, the Court of Appeals erred in holding that OCGA § 33-24-41.1 requires that there be no allocation of payments to punitive damages.

It is certainly true that punitive damages cannot be recovered under UM insurance, as the public policy involved is to provide for compensatory damages

4

only. See *State Farm Mut. Ins. Co. v. Weathers*, 260 Ga. 123 (392 SE2d 1) (1990); *Bonamico v. Kisella*, 290 Ga. App. 211, 213 (659 SE2d 666) (2008); *Roman v. Terrell*, 195 Ga. App. 219, 219-222 (2), (3) (393 SE2d 83) (1990). But that does not mean that there is a prohibition found in OCGA § 33-24-41.1 against an allocation such as that made in the release at issue. "When we consider the meaning of a statute, 'we look first to the text of the (statute), and if the text is clear and unambiguous, we look no further, attributing to the (statute) its plain meaning.' [Cit.]" *Hendry v. Hendry*, 292 Ga. 1, 2 (1) (734 SE2d 46) (2012). And, examining the statutory language, we find that there is no prohibition on allocation of damages in the release, but only that it "shall" release the carrier from "all liability from any claims of the claimant or claimants based on injuries to such claimant or claimants" and "from all personal liability from any and all claims arising from the occurrence on which the claim is based except to the extent other insurance coverage is available which covers such claim or claims." OCGA § 33-24-41.1 (b) (1) and (2). This the release did, and it is uncontroverted that the $30,000 paid represented the limits of Oliviera's policy.

Progressive argues that payment for the punitive damages cannot be

5

considered to be "based on injuries" to Carter, or to be "claims arising from the occurrence," under OCGA § 33-24-41.1 (b) (1) and (2). It is correct that "[p]unitive damages are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence." *Hospital Auth. of Gwinnett County v. Jones*, 259 Ga. 759, 762 (2) (386 SE2d 120) (1989) (citation and punctuation omitted), vacated by the United States Supreme Court, judgment affirmed and reinstated on remand, 261 Ga. 613 (409 SE2d 501) (1991) (Citation and punctuation omitted.) See also OCGA § 51-12-5.1 (c) ("Punitive damages shall be awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant.") However, Progressive overlooks the fact that punitive damages *must* arise from and be based upon a compensable injury, as "[a] claim for punitive damages has efficacy only if there is a valid claim for actual damages to which it could attach. Punitive damages may not be recovered where there is no entitlement to compensatory damages." *Southern Gen. Ins. Co. v. Holt*, 262 Ga. 267, 269 (2) (416 SE2d 274) (1992) (Citations and punctuation omitted.) Accordingly, nothing in OCGA § 33-24-41.1 precludes a statement in the release that a portion of the payment be allocated to punitive damages.

In its decision below, the Court of Appeals expressed concern that inclusion of an allocation to punitive damages in a release such as the one here would "force exhaustion of liability coverage" and "indirectly shift[] payment of punitive damages from the liability carrier to the underinsured motorist carrier, contrary to the purpose of underinsured motorist coverage." *Carter*, supra at 274-275. However, such concern is ill-founded; the statutory scheme effectively prevents such a shifting. Under OCGA § 33-24-41.1 (d) (2), "the amount paid [under a limited release] shall be admissible as provided by law as evidence of the offset against the liability of an uninsured motorist carrier and as evidence of the offset against any verdict of the trier of fact." And, by the plain language of the statute, it is "the amount paid" that is admissible, not merely the amount attributed to compensatory damages. Further, preclusion of any such shifting of punitive damages to the UM carrier is also effected by OCGA § 33-7-11.[2] Under OCGA § 33-7-11

---

[2] OCGA § 33-7-11 reads in pertinent part:

(a) (1) No automobile liability policy or motor vehicle liability policy shall be issued or delivered in this state to the owner of such vehicle or shall be issued or delivered by any insurer licensed in this state upon any motor vehicle then principally garaged or principally used in this state unless it contains an endorsement or provisions undertaking to pay the insured damages for bodily injury, loss of consortium or death of an insured, or for injury to or destruction of property of an insured under the named insured's policy sustained from the owner or operator of an

7

uninsured motor vehicle, within limits exclusive of interests and costs which at the option of the insured shall be:

(A) Not less than $25,000.00 because of bodily injury to or death of one person in any one accident, and, subject to such limit for one person, $50,000.00 because of bodily injury to or death of two or more persons in any one accident, and $25,000.00 because of injury to or destruction of property; or

(B) Equal to the limits of liability because of bodily injury to or death of one person in any one accident and of two or more persons in any one accident, and because of injury to or destruction of property of the insured which is contained in the insured's personal coverage in the automobile liability policy or motor vehicle liability policy issued by the insurer to the insured if those limits of liability exceed the limits of liability set forth in subparagraph (A) of this paragraph. In any event, the insured may affirmatively choose uninsured motorist limits in an amount less than the limits of liability.

. . .

(3) The coverage required under paragraph (1) of this subsection shall not be applicable where any insured named in the policy shall reject the coverage in writing. The coverage required under paragraph (1) of this subsection excludes umbrella or excess liability policies unless affirmatively provided for in such policies or in a policy endorsement. The coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to said insured by the same insurer. The amount of coverage need not be increased in a renewal policy from the amount shown on the declarations page for coverage existing prior to July 1, 2001. The amount of coverage need not be increased from the amounts shown on the declarations page on renewal once coverage is issued.

(4) The filing of a petition for relief in bankruptcy under a chapter of Title 11 of the United States Code by an uninsured motorist as defined in this Code section, or the appointment of a trustee in bankruptcy for an uninsured motorist as defined in this Code section, or the discharge in bankruptcy of an uninsured motorist as defined in this Code section shall not affect the legal liability of an uninsured motorist as the term "legal liability" is used in this Code section, and such filing of a petition for relief in voluntary or involuntary bankruptcy, the appointment of a trustee in bankruptcy, or the discharge in bankruptcy of such an uninsured motorist shall not be pleaded by the insurance carrier providing uninsured motorist protection in bar of any claim of an insured person as defined in this Code section so as to defeat payment for damages sustained by any insured person by the insurance company providing uninsured motorist protection and coverage under the terms of this chapter as now or hereafter amended; but the insurance company or companies shall have the

8

right to defend any such action in its own name or in the name of the uninsured motorist and shall make payment of any judgment up to the limits of the applicable uninsured motorist insurance protection afforded by its policy. In those cases, the uninsured motorist upon being discharged in bankruptcy may plead the discharge in bankruptcy against any subrogation claim of any uninsured motorist carrier making payment of a claim or judgment in favor of an uninsured person, and the uninsured motorist may plead said motorist's discharge in bankruptcy in bar of all amounts of an insured person's claim in excess of uninsured motorist protection available to the insured person.

(b)(1)  As used in this Code section, the term:

(A) "Bodily injury" shall include death resulting from bodily injury.

(B) "Insured" means the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise; any person who uses, with the expressed or implied consent of the named insured, the motor vehicle to which the policy applies; a guest in such motor vehicle to which the policy applies; or the personal representatives of any of the above. For policies issued or renewed on or after July 1, 2006, the term "insured" shall also mean a foster child or ward residing in the household of the named insured pursuant to a court order, guardianship, or placement by the Department of Family and Children Services or other department or agency of the state, while in a motor vehicle or otherwise.

(C) "Property of the insured" as used in subsection (a) of this Code section means the insured motor vehicle and includes the personal property owned by the insured and contained in the insured motor vehicle.

(D) "Uninsured motor vehicle" means a motor vehicle, other than a motor vehicle owned by or furnished for the regular use of the named insured, the spouse of the named insured, and, while residents of the same household, the relative of either, as to which there is:

(i) No bodily injury liability insurance and property damage liability insurance;

(ii) Bodily injury liability insurance and property damage liability insurance and the insured has uninsured motorist coverage provided under the insured's motor vehicle insurance policy; the motor vehicle shall be considered uninsured, and the amount of available coverages shall be as follows:

(I) Such motor vehicle shall be considered uninsured to the full extent of the limits of the uninsured motorist coverage provided under the insured's motor vehicle insurance policies, and such coverages shall apply to the insured's losses in addition to the amounts payable under any available bodily injury liability and property damage liability insurance coverages. The insured's uninsured motorist

9

coverage shall not be used to duplicate payments made under any available bodily injury liability insurance and property damage liability insurance coverages but instead shall be available as additional insurance coverage in excess of any available bodily injury liability insurance and property damage liability insurance coverages; provided, however, that the insured's combined recovery from the insured's uninsured motorist coverages and the available coverages under the bodily injury liability insurance and property damage liability insurance on such uninsured motor vehicle shall not exceed the sum of all economic and noneconomic losses sustained by the insured. For purposes of this subdivision, available coverages under the bodily injury liability insurance and property damage liability insurance coverages on such motor vehicle shall be the limits of coverage less any amounts by which the maximum amounts payable under such limits of coverage have, by reason of payment of other claims or otherwise, been reduced below the limits of coverage;

(II) Provided, however, that an insured may reject the coverage referenced in subdivision (I) of this division and select in writing coverage for the occurrence of sustaining losses from the owner or operator of an uninsured motor vehicle that considers such motor vehicle to be uninsured only for the amount of the difference between the available coverages under the bodily injury liability insurance and property damage liability insurance coverages on such motor vehicle and the limits of the uninsured motorist coverages provided under the insured's motor vehicle insurance policies; and, for purposes of this subdivision, available coverages under the bodily injury liability insurance and property damage liability insurance coverages on such motor vehicle shall be the limits of coverage less any amounts by which the maximum amounts payable under such limits of coverage have, by reason of payment of other claims or otherwise, been reduced below the limits of coverage; and

(III) Neither coverage under subdivision (I) nor (II) of this division shall be applicable if the insured rejects such coverages as provided in paragraph (3) of subsection (a) of this Code section. For private passenger motor vehicle insurance policies in effect on January 1, 2009, insurers shall send to their insureds who have not rejected coverage pursuant to paragraph (3) of subsection (a) of this Code

10

(b) (1) (D) (ii) (I), recovery under the UM policy will be limited to "the insured's *losses* in addition to the amounts payable under any available [liability] coverages," and, "the insured's combined recovery from the insured's uninsured motorist coverages and the available [liability] coverages . . . *shall not exceed the sum of all economic and noneconomic losses sustained by the insured*." (Emphasis supplied.) Again, punitive damages do not represent

section a notice at least 45 days before the first renewal of such policies advising of the coverage options set forth in this division. Such notice shall not be required for any subsequent renewals for policies in effect on January 1, 2009, or for any renewals for policies issued after January 1, 2009. The coverage set forth in subdivision (I) of this division need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage set forth in subdivision (I) of this division and selected the coverage set forth in subdivision (II) of this division in connection with a policy previously issued to said insured by the same insurer;

(iii) Bodily injury liability insurance and property damage liability insurance in existence but the insurance company writing the insurance has legally denied coverage under its policy;

(iv) Bodily injury liability and property damage liability insurance in existence but the insurance company writing the insurance is unable, because of being insolvent, to make either full or partial payment with respect to the legal liability of its insured, provided that in the event that a partial payment is made by or on behalf of the insolvent insurer with respect to the legal liability of its insured, then the motor vehicle shall only be considered to be uninsured for the amount of the difference between the partial payment and the limits of the uninsured motorist coverage provided under the insured's motor vehicle insurance policy; or

(v) No bond or deposit of cash or securities in lieu of bodily injury and property damage liability insurance.

. . .

11

"losses" by the insured, and regardless of any designation of such payments in the release, when the UM policy is brought into play, the combined recovery will not exceed the insured's economic and noneconomic losses. Similarly, if the insured selects coverage under OCGA § 33-7-11 (b) (1) (D) (ii) (II), coverage will be limited to "the difference between the *available* [liability] coverages . . . and the limits of the uninsured motorist coverages provided under the insured's motor vehicle insurance policies." Accordingly, the Court of Appeals erred in failing to recognize that the plain language of the statutory scheme achieves the goal of forbidding the shifting of punitive damages, and it was error to construe the release allocation as a failure to exhaust the limits of the liability policy, and thus to preclude recovery under the insured's UM policy.

Judgment reversed. All the Justices concur.

Decided July 11, 2014.

Certiorari to the Court of Appeals of Georgia – 320 Ga. App. 271.

Toliver & Gainer, William G. Gainer, Samuel J. Crowe, for appellant.

Carlock, Copeland & Stair, Erica L. Parsons, Lueder, Larkin & Hunter, Jason W. Hammer, for appellees.