**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 9, 2025**

# In the Court of Appeals of Georgia

A25A0217, A25A0228. SLAUGHTER et al. v. CRAVENS; and vice
versa.

MARKLE, Judge.

These appeals arise from an auto accident in which Ashleigh Slaughter rear-ended Jack Cravens while she was driving a minivan owned by Locust Grove Flowers and Gifts ("the flower shop"). Cravens filed suit against Slaughter, as well as Thomas West ("Thomas") and Janet Davis-West ("Janet"), who owned the flower shop and whose insurance covered the minivan. In his complaint, Cravens alleged that Slaughter was negligent, and that Thomas and Janet were negligent and vicariously liable for Slaughter's conduct because she was working for the flower shop at the time

of the accident.[1] The trial court initially found that Cravens had reached a settlement with Thomas and Slaughter for the limits of the insurance policy, but that the settlement did not cover the claims against Janet. Upon reconsideration, however, the trial court determined that no settlement had been reached as to any defendant. The trial court then granted partial summary judgment on Cravens's claims for punitive damages and negligent entrustment, but denied summary judgment as to negligence, negligent hiring and retention, and vicarious liability. We granted interlocutory review from these orders, and these appeals followed.

In Case No. A25A0217, Slaughter, West, and Davis-West argue that the trial court erred by (1) ultimately concluding there was no enforceable settlement; (2) striking evidence of the settlement in the pre-trial order; (3) excluding their expert to rebut the testimony of Cravens's treating physician; (4) refusing to trifurcate the trial; and (5) denying the motion for summary judgment on the negligent hiring and retention and vicarious liability claims and attorney fee claims. In Case No. A25A0228, Cravens argues that the trial court erred in its initial order granting the motion to enforce settlement, and this Court should clarify that the order denying the

---

[1] Cravens named several others as defendants, but they were later dismissed from the case.

motion to enforce settlement supersedes the prior order. For the reasons that follow, in Case No. A25A0217, we conclude there was a valid and enforceable settlement. Accordingly, we reverse the orders granting the motion for reconsideration and denying Janet's motion to enforce the settlement; we vacate the trial court's remaining orders; and we remand for further proceedings consistent with this opinion. And, as a result of these holdings, the cross-appeal in Case No. A25A0228 is dismissed as moot.

> We conduct a de novo review of a trial court's order on both a motion to enforce a settlement agreement and a motion for summary judgment. The issues raised in such motions are analogous. To prevail on either a motion for summary judgment or a motion to enforce a settlement agreement, a party must show the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the appellant's case.

(Citations and punctuation omitted.) *Anderson v. Benton*, 295 Ga. App. 851, 852 (673 SE2d 338) (2009); see also *Diaz v. Thweatt*, 373 Ga. App. 586 (908 SE2d 22) (2024*);* *Wright v. Nelson*, 358 Ga. App. 871, 871-872 (856 SE2d 421) (2021).[2]

---

[2] In contrast, where the trial court conducts an evidentiary hearing and takes testimony, it acts as the fact-finder, and we review the trial court's order for clear

So viewed, the record shows that, in February 2019, Slaughter was driving a minivan displaying the flower shop's logo to run various errands and deliver flowers for Janet. As Slaughter approached an intersection, she glanced down at the navigation on her cell phone, but when she looked up she realized that the traffic in front of her was not moving, and she struck Cravens's truck. She estimated that she was traveling about 50 mph at the time of the collision. Slaughter told police she was delivering flowers for Janet, her boss, and that she had only worked for the flower shop for a short time. Police cited Slaughter for following too closely. Janet and her husband Thomas came to the accident scene and unloaded the flower shop's items from the van.[3] Later that evening, Cravens began to experience severe pain, leading to lengthy medical treatments.

Janet and Thomas carried liability coverage for the van through Auto-Owners Insurance Company with a $50,000 policy limit, and both were listed as the insureds on the policy. In November 2019, Craven's counsel sent Auto-Owners a demand for

---

error. *Francis v. Chavis*, 345 Ga. App. 641, 642, n. 1 (814 SE2d 778) (2018). In this case, the trial court held a hearing, but it heard only argument and did not take any testimony.

[3] The title to the van was still in the previous owner's name. Janet was the sole owner of the flower shop, but Thomas's name appeared on the lease.

settlement for the policy limits. Per the terms of the demand, which included several typographical errors, Cravens sought to settle his

> bodily injury claims against your insureds (Thomas West and Ashleigh Slaughter) under the following terms, as well as those set forth in the enclosed Limited Liability Release:
>
> 1. You have 30 days from the date of receipt of this offer to accept this offer. The 30-day period shall be conclusively established by the date Auto-Owners Insurance Company receives this correspondence as shown on the USPS green card or FedEx delivery confirmation; If we do not actually receive a timely acceptance of this offer, it will be deemed rejected, and we will file a lawsuit against your insureds.
>
> 2. Settlement check in the amount of $50,000.00 payable to The Werner Law Firm, LLC in trust for Jack Cravens [FEIN 82-2412280], which must be delivered to my office within ten (10) days after your written acceptance of this offer to settle. Performance is a required condition of acceptance of this demand. This limited release will be signed at the conclusion of Mr. Craven's case;
>
> 3. A limited release for the claims of Mr. Smart [sic[4]] in accordance with OCGA § 33-24-41.1 must be delivered to my office at or before the time the check arrives;

---

[4] Smart was the passenger in Cravens's truck at the time of the accident.

4. We get an in person statement of both, the aforementioned insureds, at this law firm's address to confirm that there is no other insurance coverage for this accident;

5. The release must not contain any indemnification language. However, Mr. Smart [sic] will sign a lien affidavit stating that he will satisfy all valid medical liens at the time of distribution.

Although the demand indicated that a release would be attached, it appears from the record that no such document was included.

Auto-Owners received the demand letter in early December, and a week later it sent a check for the full amount to Cravens's attorney along with a limited liability release it had drafted. This release sought to discharge Slaughter, Thomas, and Janet; it covered all claims; and it included an indemnification clause. The check was made payable to "Jack Cravens & Werner Law Firm."

After receiving the check and release, Cravens's attorney contacted Auto-Owners to clarify the demand, noting that he had mistakenly listed Smart instead of Cravens, asking if he needed to submit a corrected demand, and seeking contact information for the insureds. Auto-Owners responded with the contact information

for Janet and Thomas, and it confirmed that it understood the demand despite the error. At no time in these communications did the parties discuss the release or settlement check. Two weeks later, Cravens's counsel sent a follow-up e-mail asking for Slaughter's contact information.

Shortly thereafter, Cravens sent a demand letter to Cravens's uninsured/underinsured motorist ("UM") carrier, which was also Auto-Owners, seeking to settle his claims for UM coverage. In this letter, Cravens wrote, "Auto Owners is also the at-fault carrier and they have already offered to pay their limits of $50,000 in exchange for a limited release." Attached to the letter were copies of the check and limited release Auto-Owners previously submitted.

Despite these communications with Auto-Owens, Cravens filed suit against Slaughter, Janet, and Thomas (collectively "the defendants"), in March. According to the complaint, Slaughter was negligent for following too closely, reckless driving, distracted driving, and speeding, and Janet and Thomas were vicariously liable for Slaughter's conduct and negligent entrustment for allowing Slaughter to drive the flower shop's van. He also sought punitive damages and attorney fees. Cravens later

amended the complaint to clarify that he was raising claims of negligent hiring and retention.

A few weeks later, Auto-Owners contacted Cravens's attorney to obtain a copy of the release it had sent as part of its settlement for the at-fault coverage. Cravens's attorney responded that the case had not settled. In September 2020, Auto-Owners settled the UM coverage.

Thereafter, Slaughter and Thomas moved to enforce the settlement, arguing that they accepted Cravens's demand when they sent the check and release. They noted that Cravens did not include a release with his demand, despite stating that he would do so, and that Cravens never objected to their proposed release or returned the check. They further noted that Cravens used the check and release when he made his demand for UM settlement and thus he waived any claim that there was no settlement. In response, Cravens denied that the parties reached a settlement, arguing that the response was a counteroffer because it did not comport with the terms of the demand in that the release included indemnification language and included Janet. Notably, Cravens neither deposited the check nor returned it.

Following a hearing, the trial court granted the motion to enforce the settlement in an order dated February 11, 2021. The trial court found that Slaughter and Thomas followed Cravens's instructions, Cravens never objected to the proposed release, and he used the check and release to obtain a UM settlement, such that the parties reached a settlement in another manner under OCGA § 9-11-67.1 (c). Thereafter, Slaughter and Thomas moved for entry of final judgment. On June 30, 2021, the trial court granted the motion, ordering Slaughter and Thomas to remit a settlement check along with a release that excluded indemnification language.[5]

Meanwhile, Janet and Thomas moved for summary judgment on the negligence and vicarious liability claims, as well as on the punitive damages and attorney fees. Slaughter also moved for summary judgment. Following a hearing, the trial court granted in part the pending summary judgment motions as to the claims for punitive damages and negligent entrustment; the trial court denied the motions as to the claims for negligence, vicarious liability, and negligent hiring and retention.

Thereafter, Janet moved to enforce the settlement as to the claims against her because she was an "insured" under the Auto-Owners policy, and the trial court had

---

[5] Cravens sought interlocutory review of that order, but this Court denied the application.

granted the motion to enforce as to Slaughter and Thomas. Cravens responded that the offer to settle did not name Janet as part of the release. The trial court denied the motion.[6]

In the consolidated pre-trial order dated January 2023, Cravens listed his treating physician, Dr. Phillip Ploska as a potential witness. The defendants moved to strike Dr. Ploska because Cravens had not disclosed this expert until a few days before his deposition, and had failed to supplement his discovery responses to show that he had been continuing treatment. Following a hearing, the trial court denied the motion to strike Dr. Ploska's testimony.

The defendants then moved to trifurcate the trial into liability, damages, and attorney fees. They also sought to admit a rebuttal expert who would testify to bio-mechanical issues to challenge Cravens's allegations that the accident caused his injuries. Cravens moved to strike the rebuttal witness, and, following a hearing, the trial court granted that motion and also denied the motion to trifurcate the trial.

In November 2023, two years after the trial court entered the final judgment enforcing the settlement as to Slaughter and Thomas, Cravens moved for

---

[6] Janet sought an interlocutory appeal from that denial, but this Court denied the application for interlocutory appeal.

reconsideration, arguing that new case law showed there had been no meeting of the minds and no valid acceptance of his offer to settle. The trial court granted the motion and vacated the June 30 final judgment, finding there was no meeting of the minds given Auto-Owners' proposed release that named an additional party — Janet — who was not included in the settlement offer. This order made no specific mention of the February 11 order enforcing the settlement. The defendants sought immediate review, which this Court granted. This appeal, and Cravens's cross-appeal, followed.

*Case No. A25A0217*

In this appeal, Thomas, Janet, and Slaughter argue that the trial court erred by (1) granting the motion to reconsider the order enforcing settlement; (2) denying settlement and release as to Janet; (3) striking the evidence of the settlement in the pre-trial order; (4) excluding its rebuttal witness; (5) denying the motion to trifurcate the trial; (6) denying Thomas's and Janet's motion for summary judgment on the claims for vicarious liability and negligent retention and hiring; and (7) denying the motion for summary judgment on the claims for attorney fees under OCGA § 13-6-11. Because the existence of a settlement would be dispositive of the claims on appeal, we begin with that issue.

1. In related enumerations of error, the defendants argue that the trial court erred by concluding there was no meeting of the minds as to settlement and that Cravens had not waived his challenge to the settlement by using the check and release to settle his UM benefits claim. They further contend that the settlement covered the claims against Janet as well. Under the specific facts of this case, and in light of the conduct of the parties, we agree that there was an enforceable settlement. Thus, the trial court erred by granting the motion for reconsideration and denying Janet's motion to enforce settlement as to her.

The version of OCGA § 9-11-67.1 in effect at the time Cravens made the offer to settle provided:

> (a) Prior to the filing of a civil action, any offer to settle a tort claim for personal injury, bodily injury, or death arising from the use of a motor vehicle and prepared by or with the assistance of an attorney on behalf of a claimant or claimants shall be in writing and contain the following material terms:
>
> > (1) The time period within which such offer must be
>
> accepted, which shall be not less than 30 days from
> receipt of the offer;
> > (2) Amount of monetary payment;
>
> > (3) The party or parties the claimant or claimants will

release if such offer is accepted;

> (4) The type of release, if any, the claimant or claimants will provide to each releasee; and

> (5) The claims to be released.

(b) The recipients of an offer to settle made under this Code section may accept the same by providing written acceptance of the material terms outlined in subsection (a) of this Code section in their entirety.

(c) Nothing in this Code section is intended to prohibit parties from reaching a settlement agreement in a manner and under terms otherwise agreeable to the parties.

(d) Upon receipt of an offer to settle set forth in subsection (a) of this Code section, the recipients shall have the right to seek clarification regarding terms, liens, subrogation claims, standing to release claims, medical bills, medical records, and other relevant facts. An attempt to seek reasonable clarification shall not be deemed a counteroffer.

OCGA § 9-11-67.1 (2013).[7]

As we have repeatedly explained, OCGA § 9-11-67.1

was enacted against the backdrop of a large body of law on contract formation generally and settlement formation specifically. And as part of that existing law, settlement agreements must meet the same requirements of formation and enforceability as other contracts.

---

[7] This statute has since been amended several times, but we apply the language in effect at the time Cravens made his offer to settle. See *Patrick v. Kingston*, 370 Ga. App. 570, 571, n. 4 (898 SE2d 560) (2024); *Diaz*, 373 Ga. App. at 588, n. 1.

Importantly, there is no enforceable settlement between the parties absent mutual agreement between them. That existing law includes the fundamental principle that an offeror is the master of his or her offer and free to set the terms thereof.

(Citations and punctuation omitted.) *Patrick v. Kingston*, 370 Ga. App. 570, 575-576 (1) (898 SE2d 560) (2024); see also *White v. Cheek*, 360 Ga. App. 557, 562-563 (859 SE2d 104) (2021). "[T]he law favors compromise, and when parties have entered into a definite, certain, and unambiguous agreement to settle, it should be enforced." (Citations and punctuation omitted.) *Francis v. Chavis*, 345 Ga. App. 641, 643 (814 SE2d 778) (2018).

"Whether a settlement is an enforceable agreement is a question of law for the trial court to decide. . . . Moreover, the party asserting the existence of a contract has the burden of proving its existence and its terms." (Citations and punctuation omitted.) *Diaz*, 373 Ga. App. at 589. To accept an offer, the response must be "unconditional and identical with the terms of the offer. To constitute a contract, the offer must be accepted unequivocally and without variance of any sort." (Citation omitted.) *Grange Mut. Cas. Co. v. Woodard*, 300 Ga. 848, 852 (2) (a) (797 SE2d 814) (2017). With these standards in mind, we turn to the defendants' arguments.

(a) *Did Auto-Owners accept Cravens's offer to settle under OCGA § 9-11-67.1 (a)?*

Here, Cravens offered to settle the case for the policy limits, and that he would release his bodily injury claims against Slaughter and Thomas. Cravens failed to include a proposed release with the offer, but the release Auto-Owners proposed in response named Slaughter, Thomas, *and Janet*, and included indemnification language. Additionally, the check was not drafted in accordance with the terms of the offer, which specified that performance was a condition of acceptance. Because Auto-Owners submitted a release and check that failed to conform with the offer of settlement, there was no meeting of the minds and it did not accept Cravens's offer to settle. See *Pritchard v. Mendoza*, 357 Ga. App. 283, 288-289 (850 SE2d 472) (2020); see also *Grove v. Gibbs*, 367 Ga. App. 730, 731, n. 1, 734-735 (888 SE2d 305) (2023) (applying 2013 version of OCGA § 9-11-67.1 and concluding there was no settlement where evidence showed counteroffer was under consideration, there was no discussion of the release, and the settlement check was not deposited); *Bennett v. Novas*, 364 Ga. App. 364, 367-368 (a) (874 SE2d 871) (2022) (no acceptance under 2013 version of statute where response included request to add another party to release); *Ligon v. Hu*, 363 Ga. App. 251, 253 (2) (870 SE2d 802) (2022) (applying 2013

version of statute and finding no binding settlement where party failed to comply with terms of offer); *Jervis v. Amos*, 358 Ga. App. 589, 594-595 (1) (854 SE2d 387) (2021) (failure to execute affidavit of other insurance, which was a condition of acceptance, showed no settlement under 2013 version of statute); *Duenas v. Cook*, 347 Ga. App. 436, 441-442 (818 SE2d 629) (2018) (no valid acceptance where insurance company submitted non-conforming release along with settlement check); compare *Diaz*, 373 Ga. App. at 590-591 (non-conforming release did not invalidate acceptance under amended version of OCGA § 9-11-67.1 (d)); *Turner v. Williamson*, 321 Ga. App. 209, 213-214 (2) (738 SE2d 712) (2013) (holding, in a case that pre-dated OCGA § 9-11-67.1, release form with additional terms would not lead to the conclusion that there was no meeting of the minds because it was a condition of performance and not a condition of acceptance).

Rather than accept Cravens's offer, Auto-Owners made a counteroffer when it sent a release with different terms and a non-conforming check. Thus, the question becomes whether Cravens accepted Auto-Owners' counteroffer. As discussed below, we conclude he did.

(b) *Did Cravens accept Auto-Owners's counteroffer?*

16

In determining whether the parties reached an agreement,

> the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement. A contract may arise through a course of conduct, and mutual acquiescence in such course of conduct may constitute sufficient consideration for that contract.

(Citation and punctuation omitted.) *Groves*, 367 Ga. App. at 734; see also *Netsoft Assocs. v. Flairsoft, Ltd.*, 331 Ga. App. 360, 363 (771 SE2d 65) (2015). We apply an objective theory of intent, considering whether a reasonable person would consider the opposing party's response to have manifested assent. *Groves*, 367 Ga. App. at 733.

Here, when we consider all the facts and circumstances, including the communications between the parties and the conduct of Cravens's attorney, we conclude that Cravens accepted the counteroffer; therefore, the parties reached an enforceable settlement. See *Netsoft Assocs.*, 331 Ga. App. at 363 (evidence of mutual assent through acts consistent with existence of settlement); *Turner*, 321 Ga. App. at 213 (2) (written and oral communications demonstrated that parties reached agreement to settle). Auto-Owners offered to pay its policy limits; it submitted a check and proposed release covering all three of the insureds; and it supplied contact

information for Slaughter, Thomas, and Janet. When Cravens's attorney contacted Auto-Owners's counsel to discuss the typographical error in the original settlement offer, Auto-Owners confirmed that it understood the parties would be settling Cravens's claims. Notably, Cravens's attorney never raised any objection to the language in the release or any issue with the manner in which the check was drafted. Cravens's counsel further confirmed that he was permitted to reach out to the insureds directly without Auto-Owners bringing in counsel to represent them. There would have been no reason for Auto-Owners to provide Cravens the insureds' contact information and allow them to be interviewed, without counsel, if the parties had not agreed to settle the case.

Most importantly, Cravens's counsel utilized the purported settlement of his liability claims when he sought settlement from Auto-Owners as the UM carrier. As out Supreme Court has explained, "as a matter of statutory construction, . . . a party must exhaust available liability coverage before recovering under a UM policy, and . . . a plaintiff may pursue his UM claim if he settles for the limits of the policy as stated in the policy and executes a limited release in accordance with OCGA § 33–24–41.1." (Citation and punctuation omitted.) *Thompson v. Allstate Ins. Co.*, 285 Ga. 24, 26 (1)

(673 SE2d 227) (2009); see also *Carter v. Progressive Mountain Ins.*, 295 Ga. 487, 489 (761 SE2d 261) (2014). Given this requirement, Cravens's attorney could only settle the UM claims if there had been an exhaustion of liability benefits, which, under the facts of this case, would mean the liability claims had settled. As Auto-Owners was both the liability and UM carrier, it objectively would have understood Cravens to have accepted its counter offer to settle the liability claims if it was also seeking settlement of the UM claim. *Groves*, 367 Ga. App. at 733. Applying an objective theory of intent, these conversations and Cravens's attorney's conduct would have led to the conclusion that the claim had settled. Id.

Moreover, we are not persuaded by Cravens's claim that his UM settlement demand only indicated that Auto-Owners had "offered" to pay the liability limit. As our Supreme Court has repeatedly held, exhaustion of the liability benefits is a condition precedent to obtaining UM benefits. *Carter*, 295 Ga. at 489; *Thompson*, 285 Ga. at 26 (1); *Daniels v. Johnson*, 270 Ga. 289, 291 (2) (509 SE2d 41) (1998). As a result, under these facts and given the communications between the parties, we conclude that Cravens accepted the counteroffer, and the parties therefore agreed to settle their claims.

(c) *Did the settlement include Janet?*

Our conclusion then leads to the question of whether the claims against Janet were included in the settlement. The defendants contend that the settlement would extend to the claims against Janet because she was an insured under the policy, and because she was the sole owner, and alter-ego, of the flower shop. We conclude that the settlement covers all three defendants under the terms of the counteroffer.

Although Cravens's original offer mentioned only Auto-Owners' "insureds (Thomas West and Ashleigh Slaughter)," Auto-Owners counter offer named Thomas, Slaughter, and Janet, as she was also an insured under the policy. Because the counteroffer included Janet's name in the release, and Cravens accepted the counteroffer, the release covers claims against all three defendants. See *Grange Mut. Cas. Co.*, 300 Ga. at 852 (2) (a) (acceptance must be "unconditional and identical with the terms of the offer.") (citation omitted).

Moreover, the release includes language that it covers "not only the individual person [sic] named in this Release, but also any other possible joint tortfeasor or joint obligor who could be charged with liability or responsibility for the injuries and damages for which this Release is given[.]"

20

> A release or settlement agreement is a contract subject to construction by the court. . . . the cardinal rule of construction is to determine the intention of the parties. Where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. Such a contract is the only evidence of what the parties intended and understood by it.

(Citation and punctuation omitted.) *Avery v. Grubb*, 336 Ga. App. 452, 458 (2) (784 SE2d 817) (2016). The plain language in Auto-Owners's release confirms that it would cover Janet as a joint tortfeasor. Accordingly, we conclude the settlement was enforceable as to the claims against Janet.

2. In their remaining arguments on appeal, the defendants raise numerous allegations of error arising from the court's pre-trial orders. Because we conclude that there was an enforceable settlement covering all three defendants, we need not address the merits of these alleged errors, and we vacate the trial court's orders as to these issues.

*Case No. A25A0228*

3. In this cross-appeal, Cravens seeks reversal of the trial court's February 11 order enforcing the settlement, on the ground that the trial court granted his motion

for reconsideration. In light of our conclusion in Division 1 that there was an enforceable settlement, this cross-appeal is moot.

In summary, in Case No. A25A0217, we reverse the orders granting the motion for reconsideration and denying Janet's motion to enforce the settlement; we vacate the trial court's remaining evidentiary and summary judgment orders; and we remand the cases for further proceedings consistent with this opinion. We dismiss as moot Case No. A25A0228.

*Judgment reversed in part; vacated in part; and case remanded in Case No. A25A0217; appeal dismissed as moot in Case No. A25A0228. Doyle, P. J., concurs. Padgett, J., concurs in judgment only.*